THE HONORABLE JOHN H. CHUN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ZULILY, LLC,

                 Plaintiff,

      v.

AMAZON.COM, INC.,

                 Defendant.

Case No. 2:23-cv-01900-JHC

**AMAZON'S MOTION TO DISMISS**

NOTE ON MOTION CALENDAR:
June 3, 2024

*ORAL ARGUMENT REQUESTED*

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................. 1

STATEMENT OF THE CASE........................................................................................... 3

    A.    The Complaint's Allegations ................................................................. 3

    B.    The Complaint's Claims ......................................................................... 5

LEGAL STANDARD.......................................................................................................... 5

ARGUMENT ....................................................................................................................... 6

I.    ZULILY LACKS ANTITRUST STANDING, REQUIRING DISMISSAL
    OF ALL ITS ANTITRUST CLAIMS ................................................................. 6

    A.    Zulily Is Not a Participant in the Alleged "Online Superstore Market"
        and Lacks Antitrust Standing as a Result ............................................. 6

    B.    Zulily Lacks Standing as a Potential Entrant....................................... 9

    C.    Zulily Fails to Allege That Other Online Markets Are Relevant
        Antitrust Markets or That Amazon Possesses Market Power or Took
        Any Anticompetitive Acts in Such Markets ......................................... 10

II.    ZULILY FAILS TO STATE A CLAIM FOR A HORIZONTAL PRICE
    CONSPIRACY UNDER SECTION 1 OF THE SHERMAN ACT. ................ 12

    A.    Zulily's "Hub-and-Spoke" Conspiracy Fails to Allege a Rim.......... 12

    B.    Zulily's Alleged Vertical Third-Party Retailer and Wholesaler
        Conspiracies Fail to State a Claim ....................................................... 14

III.    ZULILY FAILS TO STATE CLAIMS OF ANTICOMPETITIVE
    MONOPOLY MAINTENANCE UNDER SECTION 2 OF THE SHERMAN
    ACT.................................................................................................................... 17

IV.    ZULILY'S STATE-LAW CLAIMS ALSO SHOULD BE DISMISSED....................... 20

CONCLUSION.................................................................................................................... 23

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Am. Ad Mgmt., Inc. v. Gen. Tel. Co.,*
    190 F.3d 1051 (9th Cir. 1999) .................................................................6, 7, 9

*Am. Ad Mgmt. Inc, v. GTE Corp.,*
    92 F.3d 781, 789 (9th Cir. 1996) ...................................................................14, 15

*Andrx Pharm., Inc. v. Biovail Corp. Int'l,*
    256 F.3d 799 (D.C. Cir. 2001) ...........................................................................9

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)...................................................................................5, 22

*Ashley Creek Phosphate Co. v. Chevron USA, Inc.,*
    315 F.3d 1245 (10th Cir. 2003) ...........................................................................9

*Ass'n of Wash. Pub. Hosp. Dists. v. Philip Morris Inc.,*
    241 F.3d 696 (9th Cir. 2001) ...........................................................................20

*Atl. Richfield Co. v. USA Petroleum Co.,*
    495 U.S. 328 (1990)........................................................................................6

*Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.,*
    9 F.4th 1102 (9th Cir. 2021) ...........................................................................14

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007).................................................................................5, 14, 15

*Bourns, Inc. v. Raychem Corp.,*
    331 F.3d 704 (9th Cir. 2003) ...........................................................................9

*Brantley v. NBC Universal, Inc.,*
    675 F.3d 1192 (9th Cir. 2012) ...........................................................................15

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.,*
    509 U.S. 209 (1993)...............................................................15, 18, 19, 20

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,*
    429 U.S. 477 (1977).......................................................................................15

*Bubar v. Ampco Foods, Inc.,*
    752 F.2d 445 (9th Cir. 1985) ........................................................................9, 10

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

*Buffets, Inc. v. Klinke,*
  73 F.3d 965 (9th Cir. 1996) ...................................................................................22

*Cal. Comput. Prods., Inc. v. Int'l Bus. Machs. Corp.,*
  613 F.2d 727 (9th Cir. 1979) .................................................................................18

*California ex rel. Harris v. Safeway, Inc.,*
  651 F.3d 1118 (9th Cir. 2011) ...............................................................................14

*Cargill, Inc. v. Monfort of Colo., Inc.,*
  479 U.S. 104 (1986) ..............................................................................................19

*Chapman v. N.Y. State Div. for Youth,*
  546 F.3d 230 (2d Cir. 2008) ..................................................................................11

*Coronavirus Rep. v. Apple, Inc.,*
  85 F.4th 948 (9th Cir. 2023) ..................................................................................18

*Dimidowich v. Bell & Howell,*
  803 F.2d 1473 (9th Cir. 1986) ............................................................................. 14

*Epic Games, Inc. v. Apple, Inc.,*
  67 F.4th 946 (9th Cir. 2023) .................................................................14, 15, 16, 17

*FTC v. Qualcomm Inc.,*
  969 F.3d 974 (9th Cir. 2020) ...................................................................7, 12, 15, 17

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.,*
  719 P.2d 531 (Wash. 1986)....................................................................................22

*Hicks v. PGA Tour, Inc.,*
  897 F.3d 1109 (9th Cir. 2018) ...............................................................................11

*Hogan v. Amazon.com, Inc.,*
  2023 WL 3018866 (W.D. Wash. Apr. 20, 2023).......................................................6

*Hogan v. Amazon.com, Inc.,*
  2024 WL 1091671 (W.D. Wash. Mar. 13, 2024) ...................................................7, 9

*Honey Bum v. Fashion Nova,*
  63 F.4th 813 (9th Cir. 2023) ..................................................................................13

*In re Musical Instruments & Equip. Antitrust Litig.,*
  798 F.3d 1186 (9th Cir. 2015) ...........................................................................13, 14

*Kassner v. Kadlec Reg'l Med. Ctr.,*
  2012 WL 523675 (E.D. Wash. Feb. 15, 2012) ........................................................22

AMAZON'S MOTION TO DISMISS - iii
(Case No. 2:23-cv-01900-JHC)

*Kendall v. Visa U.S.A., Inc.*,
   518 F.3d 1042 (9th Cir. 2008) ...................................................................5

*Murphy Tugboat Co. v. Crowley*,
   658 F.2d 1256 (9th Cir. 1981) .................................................................19

*Newcal Indus., Inc. v. Ikon Off. Sol.*,
   513 F.3d 1038 (9th Cir. 2008) ............................................................10, 11

*Ohio v. Am. Express Co.*,
   585 U.S. 529 (2018) ...........................................................................15, 19

*Omega Env't, Inc. v. Gilbarco, Inc.*,
   127 F.3d 1157 (9th Cir. 1997) .................................................................21

*Parks v. Watson*,
   716 F.2d 646 (9th Cir. 1983) .................................................................9, 10

*PBTM LLC v. Football Nw., LLC*,
   511 F. Supp. 3d 1158 (W.D. Wash. 2021)................................................21

*PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*,
   615 F.3d 412 (5th Cir. 2010) ...................................................................11

*Randy's Ring & Pinion Serv. Inc. v. Eaton Corp.*,
   2009 WL 10727790 (W.D. Wash. Nov. 16, 2009) ...................................22

*Reilly v. Apple, Inc.*,
   578 F. Supp. 3d 1098 (N.D. Cal. 2022) ...................................................10

*SmileCare Dental Grp. v. Delta Dental Plan of Cal., Inc.*,
   88 F.3d 780 (9th Cir. 1996) .................................................................5, 17

*Spectrum Sports, Inc. v. McQuillan*,
   506 U.S. 447 (1993)..................................................................................18

*Verizon Commc'ns Inc. v. Law Offs. of Curtis V. Trinko, LLP*,
   540 U.S. 398 (2004)..................................................................................18

*Weyerhaeuser Co. v. Ross-Simmons Hardwood Lumber Co.*,
   549 U.S. 312 (2007)..................................................................................19

## OTHER AUTHORITIES

H. Subcomm. on Antitrust, Com. & Admin. Law of the Comm. on the Judiciary, 116th
   Cong., *Investigation of Competition in Digital Markets* (Comm. Print 2020) .......................20

AMAZON'S MOTION TO DISMISS - iv
(Case No. 2:23-cv-01900-JHC)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

Fed. R. Civ. P. 12 .................................................................................................................5

Sherman Act, 15 U.S.C. §§ 1, 2 ...................................................................................... *passim*

Washington Consumer Protection Act, Wash Rev. Code Ann. §§ 19.86.010 to
    19.86.920 ................................................................................................20, 21, 22

AMAZON'S MOTION TO DISMISS - v
(Case No. 2:23-cv-01900-JHC)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

## INTRODUCTION

Zulily, LLC ("Zulily" or "Plaintiff")'s Complaint, which parrots many of the allegations of the FTC/States and California Complaints,[1] principally alleges that Amazon successfully competed against it on price, and that customers therefore preferred to shop in Amazon's store. Zulily further wraps that plainly procompetitive practice and corresponding result in allegations of two vast conspiracies among hundreds of thousands of separate companies involving, respectively, all third-party sellers in Amazon's marketplace and all wholesale suppliers to Amazon, without providing any factual basis to make such allegations plausible. Stripped of its hyperbole, the Complaint is without merit and should be dismissed for multiple independent reasons.

First, Zulily lacks antitrust standing because it does not allege that it participated in the primary market defined in the Complaint.[2] Zulily's Complaint adopts verbatim the "Online Superstore Market" defined in the FTC/States Complaint. Ironically, however, that implausibly narrowly-defined "Online Superstore" market specifically excludes companies like Zulily to maintain that Amazon's only competitors are Walmart.com, Target.com, and eBay.com. While Zulily attempts in one conclusory paragraph to define its way into being a competitor in the "Online Superstore" market, that claim is contradicted by other more specific allegations in its own Complaint, as well as by the FTC/States Complaint that it copies in relevant respects. For instance, Zulily's calculation of Amazon's share of the "Online Superstore" market is based on measuring the sales volume of only Amazon and the online sales of the above-named three stores, which of course does not include Zulily. And Zulily's allegations themselves demonstrate that it lacked the breadth of selection necessary to qualify as an "Online Superstore" within the scope of the very market it alleges. Zulily both endeavors to benefit from the FTC/States' artificially narrow

---

[1] *FTC v. Amazon.com, Inc.*, No. 2:23-cv-1495 (W.D. Wash.) ("FTC/States"); *California v. Amazon.com, Inc.*, No. CGC-22-601826 (Cal. Sup. Ct., San Fran. Co.) ("Cal."). The Complaint was filed on behalf of Zulily, LLC, but that entity has subsequently gone out of business.

[2] Zulily fails to allege the necessary elements (intention and preparedness to enter) required for a prospective entrant to have antitrust standing even as a non-participant in the alleged relevant market.

AMAZON'S MOTION TO DISMISS - 1
(Case No. 2:23-cv-01900-JHC)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

market definition to allege that Amazon has market power—a market from which by definition it is excluded—and to inject itself into that alleged market absent any factual basis to do so (by the same stroke excluding all other competing online stores with similar selection from the same alleged market). Logic, and law, preclude that artifice.

While Zulily alternatively alleges that it was harmed in thinly-described "additional relevant markets" for particular categories of products, it does not allege facts adequate to establish that these are properly defined relevant antitrust markets. And even if it did, it has not alleged that Amazon has market power with respect to any of those markets or that it directed any conduct towards those markets. Zulily thus equally lacks antitrust standing based on its purported participation in the "additional relevant markets."

Second, even if Zulily had standing, its First Claim fails as a matter of law. Zulily attempts to allege a "hub-and-spoke" conspiracy by and between Amazon and all of the third-party sellers who sell in Amazon's marketplace, but the Complaint fails to allege any factual basis to find a horizontal agreement *among* those hundreds of thousands of third-party sellers (the alleged spokes). Such a so-called "rimless wheel" conspiracy fails to state a claim under the Sherman Act.

Third, Zulily's Second and Third Claims likewise fail as a matter of law because the conduct alleged in support of those claims is either *per se* lawful or is not adequately alleged to have harmed Zulily. For instance, one of the Complaint's central themes is to complain about the effects of *per se* lawful price competition between Amazon and Zulily. *See* Compl. ¶¶ 121–25, 135–39. Even if Zulily had antitrust standing, it has no basis to assert that its competitor violated the antitrust laws by lowering the prices it charges retail consumers to avoid being undercut by Zulily's own discounting. To the contrary, it is precisely that kind of competition that the antitrust laws affirmatively encourage, and any injury resulting from Zulily's inability to undercut Amazon on price is not an injury of the type the antitrust laws were intended to prevent.

Further, to the extent that Zulily's Second and Third Claims are premised on other alleged conduct, the Complaint contains wholly inadequate allegations of how that conduct has impacted

AMAZON'S MOTION TO DISMISS - 2
(Case No. 2:23-cv-01900-JHC)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

Zulily.  For example, the Complaint repeats the FTC/States' and California's allegations that when third-party sellers are disqualified from becoming a "featured offer," they sometimes respond by raising the prices *that they charge* in other marketplaces.  *See* Compl. ¶¶ 79–80, 84, 87, 89–93.  But Zulily admits that it "does not host third-party retailers," *id.* ¶ 9, and the handful of anecdotes it uses to try and show that it was harmed in a more circuitous way, *see id.* ¶¶ 129–35, are both conclusory and inadequate to demonstrate the requisite "substantial competitive effect" necessary for its claims.  Likewise, Zulily borrows California's allegation that Amazon's price concessions from wholesale suppliers can result in higher prices for other buyers, *see id.* ¶¶ 99–106, but it does not even attempt to allege a single instance in which that actually happened to Zulily.  Accordingly, these allegations fail to show that any agreement between Amazon and either its third-party sellers or its wholesale suppliers harmed competition to Zulily's detriment.

Fourth, and finally, for these same reasons, Zulily's analogous claims under Washington state law also fail.

## STATEMENT OF THE CASE

### A.    The Complaint's Allegations

***Zulily.***  "Zulily [was] an online retail marketplace," Compl. ¶ 4, that shuttered its store in December shortly after filing this Complaint.  However, Zulily was not a "marketplace" in the same sense as Amazon.  Amazon "is a retailer" itself, "selling goods ... directly to consumers," and it also "hosts other retailers" (called "third-party retailers" by Zulily) who in turn "sell their [own] goods on the Amazon platform." *Id.* ¶ 8.  Zulily, by contrast, "[did] not host third-party retailers." *Id.* ¶ 9.  Rather, it "[bought] products wholesale," *id.* ¶ 17, and then resold them itself, often during time-limited "flash sales," *id.* ¶ 124.

Nor was Zulily akin to Amazon's "everything store."  *Id.* ¶ 6.  Whereas Amazon "offer[s] a broad array of consumer goods across multiple product categories:  books, clothing, home goods, pet supplies, toys, and more," *id.*, Zulily primarily offered "clothes, toys, and home decor," *id.* ¶ 4.

AMAZON'S MOTION TO DISMISS - 3
(Case No. 2:23-cv-01900-JHC)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400  FAX +1.206.274.6401

**Markets.** Zulily seeks to allege that the relevant antitrust market is a "market for *online superstores*." *Id.* ¶ 30 (emphasis added). As the name suggests, this market seeks to exclude stores that operate "offline"—that is, it excludes "brick-and-mortar" stores—and it seeks to exclude stores that are not "superstores"—that is, it excludes "limited-selection or specialized stores that serve consumers looking for a specific product or category of products." *Id.* ¶ 33. Illustrating how artificially gerrymandered that alleged market is, the Complaint measures Amazon's alleged market share by comparing its sales to just *three* other online retailers: "eBay, Walmart and Target." *Id.* ¶ 58. While Zulily nominally alleges that it too "competes in the relevant market," *id.* ¶ 59, it specifically excludes not only its own sales, but also the sales of all other similarly situated online retailers, when it purports to calculate Amazon's share of the "Online Superstores" market, *id.* ¶¶ 47–50.[3]

Additionally, Zulily argues that it competes against Amazon in multiple "Online Retail Product Markets." *Id.* at 18. Zulily suggests that these markets are "online"—so again, not "brick-and-mortar," *id.* ¶ 65—and defined by product category, *see id.* ¶ 68. Zulily does not, however, explain how it delineates these "product markets" or identify who participates in them.

**Injury.** Zulily complains that Amazon's conduct caused it to "abandon" its "'Best Price Promise' program." *Id.* ¶ 139. In that campaign, Zulily displayed "Amazon price-comparisons [on] its website" for select products and stated that it "ha[d] to be the lowest retail in the market" for those products. *Id.* ¶¶ 139, 131. (Zulily's intention to offer only select products is a further reason that it did not offer the "extensive breadth and depth of product selection," *id.* ¶ 35.a, to qualify as a participant in its alleged "Online Superstores" market.) Amazon, however, allegedly "undercut" Zulily's low prices, which prevented Zulily from establishing that its prices were better than Amazon's. *Id.* ¶ 136.

---

[3] Although Amazon disputes this artificially narrow market definition—because it baselessly excludes countless other online and brick-and-mortar retailers to whom consumers can turn for substitutes—it accepts Zulily's allegations as true solely for purposes of this motion to dismiss.

AMAZON'S MOTION TO DISMISS - 4
(Case No. 2:23-cv-01900-JHC)

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400  FAX +1.206.274.6401

## B.     The Complaint's Claims

Zulily's First through Third Claims allege violations of Section 1 of the Sherman Act, 15 U.S.C. § 1.  The First Claim alleges a "Hub & Spoke Conspiracy to Restrain Trade."  Compl. ¶¶ 150–68.  The Second and Third Claims allege conspiracies to restrain trade with third-party retailers, *id.* ¶¶ 169–76 (Second Claim), and with wholesale suppliers, *id.* ¶¶ 177–86 (Third Claim).

Zulily's Fourth and Fifth Claims allege violations of Section 2 of the Sherman Act, 15 U.S.C. § 2.  The Fourth Claim alleges "Monopolization of the Online Superstore Market," *id.* ¶¶ 187–200, and the Fifth Claim alleges "Attempted Monopolization," *id.* ¶¶ 201–15.

Last, Zulily's Sixth through Eighth Claims allege violations of Washington state's antitrust and consumer protection laws.  Specifically, the Sixth Claim reasserts the Sherman Act Section 1 allegations, but as violations of state law.  *Id.* ¶¶ 216–25.  The Seventh Claim reasserts the Sherman Act Section 2 allegations as violations of state law.  *Id.* ¶¶ 226–33.  And the Eighth Claim argues that Amazon's alleged practices were unfair and deceptive.  *Id.* ¶¶ 234–38.

## LEGAL STANDARD

A court should grant a Rule 12(b)(6) motion to dismiss a complaint when the complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "[M]ere conclusory statements[] do not suffice," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), as "allegations [that] are conclusory a[re] not entitled to be assumed true," *id.* at 681.  In the context of antitrust claims, therefore, "[d]ismissal for failure to state a claim is appropriate where 'the complaint states no set of facts which, if true, would constitute an antitrust offense, notwithstanding its conclusory language regarding the elimination of competition and improper purpose.'" *SmileCare Dental Grp. v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation omitted).  To allow otherwise would "give[] the plaintiff the opportunity to extort large settlements even where he does not have much of a case," as "discovery in antitrust cases frequently causes substantial expenditures." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008).

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

<u>**ARGUMENT**</u>

## I. ZULILY LACKS ANTITRUST STANDING, REQUIRING DISMISSAL OF ALL ITS ANTITRUST CLAIMS.

Zulily lacks antitrust standing, a defect that is dispositive of its First through Seventh Claims.

To bring an antitrust claim, a plaintiff must first have antitrust standing. When determining whether a plaintiff has antitrust standing, courts consider "(1) whether the plaintiffs suffered 'antitrust injury,' i.e., the type of injury the antitrust laws were intended to prevent; (2) the directness of the injury; (3) the speculative nature of the harm; (4) the risk of duplicative recovery; and (5) the complexity in apportioning damages." *Hogan v. Amazon.com, Inc.*, 2023 WL 3018866, at *3 (W.D. Wash. Apr. 20, 2023) (first citing *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters* ("*AGC*"), 459 U.S. 519 (1983); and then citing *City of Oakland v. Oakland Raiders*, 20 F.4th 441, 455 & n.10 (9th Cir. 2021)). Zulily lacks antitrust standing because it is not a participant in the primary relevant market alleged in the Complaint; it fails to allege facts necessary for a prospective entrant to have standing in that market; and it otherwise fails to allege facts necessary to establish the existence of alternative prospective markets.

### A. Zulily Is Not a Participant in the Alleged "Online Superstore Market" and Lacks Antitrust Standing as a Result.

The "antitrust injury requirement" serves a critical function: "It ensures that the harm claimed by the plaintiff corresponds to the rationale for finding a violation of the antitrust laws in the first place, and it prevents losses that stem from competition from supporting suits by private plaintiffs for either damages or equitable relief." *Atl. Richfield Co. v. USA Petroleum Co.* ("*ARCO*"), 495 U.S. 328, 342 (1990). Because "[t]he Supreme Court's cases have ... 'emphasized the central interest [of the Sherman Act] in protecting the economic freedom of participants in the relevant market,'" *Am. Ad Mgmt., Inc. v. Gen. Tel. Co.*, 190 F.3d 1051, 1057 (9th Cir. 1999) (last alteration in original) (quoting *AGC*, 459 U.S. at 538), the plaintiff in an antitrust case *must* "be a

AMAZON'S MOTION TO DISMISS - 6
(Case No. 2:23-cv-01900-JHC)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400  FAX +1.206.274.6401

participant in the same market as the alleged malefactors," *id.* (citation omitted).  Consequently, "[a]ntitrust injury requires the plaintiff to have suffered its injury in the market where competition is being restrained."  *Id.*  In other words, "[p]arties whose injuries ... are experienced in another market do not suffer antitrust injury."  *Id.*; *see also FTC v. Qualcomm Inc.*, 969 F.3d 974, 992 (9th Cir. 2020) (same); *Hogan v. Amazon.com, Inc.*, 2024 WL 1091671, at *3 (W.D. Wash. Mar. 13, 2024) (same).  Here, Zulily fails to plausibly allege that it was a participant in the alleged "Online Superstore Market"—the only market for which it even attempts to allege that Amazon possesses market power.

Copying the FTC/States' allegations, Zulily defines an "Online Superstore" as an entity that competes for "online consumer sales across multiple categories of new retail goods—through a unique set of features that increase efficiencies for shoppers, including custom delivery."  Compl. ¶ 30.  Though Zulily nominally claims to be a competitor in that market, *see id.* ¶ 59, there is a stark contrast between how Zulily describes itself versus the description it provides of the other participants in the purported "Online Superstores" market.  According to Zulily, "Online Superstores" possess unique features that are not interchangeable nor easily replicated by brick-and-mortar and limited-selection online stores, such as:  an "extensive breadth and depth of product selection," "[v]aluable cross-category consumer data" that provides "shoppers a more personalized shopping experience," the ability to "make cross-category shopping recommendations," and the ability to offer "easy comparison shopping across multiple brands and/or product categories."  *Id.* ¶ 35.  Consequently, although Zulily refers to itself as "an online retailer offering a 'breadth and depth' of product selection" spanning "multiple categories, including clothes, beauty, toys, home decor, and electronics," *id.* ¶ 59, that does not remotely establish it as offering the wide range of products necessary to meet the highly artificial market the FTC/States alleged and that Zulily adopted wholesale in its Complaint.  Providing products in a handful of categories hardly scratches the surface of the "Online Superstore" market definition that Zulily itself outlines in its Complaint.

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

Illustrating the point, Zulily uses identical market power allegations to those alleged in the FTC/States Complaint, which, regardless of their actual plausibility, presuppose that only four companies—Amazon, Walmart, Target, and eBay—are participants in the "Online Superstores" market. *See* Compl. ¶¶ 47–50 (citing FTC/States Compl. ¶ 166). For example, Zulily alleges that Amazon "has maintained an estimated market share" ranging from 69% to 77% between 2015 and 2021. *Id.* ¶ 49. Those figures are taken directly from paragraph 170 and Figure 13 of the FTC/States Complaint, which calculates market share among *only* the online sales of Amazon, eBay, Walmart, and Target. *See* FTC/States Compl. ¶ 170 & Fig. 13. The alleged market shares of those four companies add up to 100% for each of the years depicted, *id.*, leaving no room for anyone else (including Zulily) to be in the market as they have sought to define it. Similarly, Zulily alleges that "[o]ther data ... puts Amazon's market share at more than 82%." Compl. ¶ 50. That number is taken directly from paragraph 171 and Figure 14 of the FTC/States Complaint, where it is again the product of a calculation that assumes the online sales of the same four companies alone constitute the entire alleged relevant market. *See* FTC/States Compl. ¶ 171 & Fig. 14. Zulily even repeats the FTC/States' allegation that, beyond those four, all other companies "lack the breadth and/or depth of online superstores." Compl. ¶ 51 (paraphrasing FTC/States Compl. ¶ 172).

Thus, Plaintiff intentionally alleges a relevant market (along with related market power allegations) that specifically excludes all other companies, including Zulily itself (presumably in order artificially to inflate Amazon's alleged market share). Were Zulily to be considered part of the Online Superstores market (because, notwithstanding its relatively narrow product selection, it sold at least some consumer products online), then so too would countless other online retailers who have even wider selections of products (e.g., Costco.com, Temu.com, Shein.com, Bestbuy.com, Kohls.com, Kmart.com, Sears.com, HomeDepot.com, FiveBelow.com, Macys.com, etc.), leaving zero credible basis for Zulily's contrived market share allegations. But Zulily chose to allege that the relevant market is an "Online Superstores" market in which only

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

four stores control 100% of the market share, Compl. ¶¶ 47–50, excluding itself and all other online retailers except those four. As such it is not a participant in the alleged relevant market, and any injuries that it claims to have sustained from antitrust violations alleged to have occurred in that market do not constitute "antitrust injury" for Zulily. *Am. Ad Mgmt.*, 190 F.3d at 1057; *Hogan*, 2024 WL 1091671, at *3.

### B. Zulily Lacks Standing as a Potential Entrant.

Zulily also does not plead plausible facts to meet the criteria for a prospective entrant to have antitrust standing. A "potential competitor has standing if he can show a genuine intent to enter the market and a *preparedness* to do so." *Bubar v. Ampco Foods, Inc.*, 752 F.2d 445, 450 (9th Cir. 1985) (emphasis added) (citing *Solinger v. A&M Recs., Inc.*, 586 F.2d 1304, 1309–10 (9th Cir. 1978)). The "intention and preparedness test" focuses on analyzing: (1) the "background and experience of plaintiff in his prospective business," (2) "[a]ffirmative action on the part of plaintiff to engage in the proposed business," (3) the "ability of plaintiff to finance the business and the purchase of equipment and facilities necessary to engage in the business," and (4) the "consummation of contracts by plaintiff." *Parks v. Watson*, 716 F.2d 646, 660 (9th Cir. 1983) (per curiam) (quoting *Solinger*, 586 F.2d at 1310).[4]

Although Zulily alleges that both the FTC and Amazon have recognized Zulily as an "emerging competitor in the relevant market," Compl. ¶¶ 60–61, it fails to allege facts sufficient to meet the intent and preparedness standard to enter the artificially narrow market it has engrafted as the foundation of its Complaint. Critically, there are no allegations that Zulily engaged in, for example, the process of "assembling the personnel, the equipment, the facilities, ... [or] allocating the capital to" invest in its expansion into the breadth of retail offerings necessary to qualify for its own narrow definition of an Online Superstore. *Bourns, Inc. v. Raychem Corp.*, 331 F.3d 704, 711

---

[4] *See also Ashley Creek Phosphate Co. v. Chevron USA, Inc.*, 315 F.3d 1245, 1254–55 (10th Cir. 2003) (same); *Andrx Pharm., Inc. v. Biovail Corp. Int'l*, 256 F.3d 799, 806–07 & n.11 (D.C. Cir. 2001) (same).

AMAZON'S MOTION TO DISMISS - 9
(Case No. 2:23-cv-01900-JHC)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400  FAX +1.206.274.6401

(9th Cir. 2003); *see also Parks*, 716 F.2d at 660 (aspiring market entrant lacked standing when it had not "taken sufficient demonstrable steps for entry").

Indeed, the Complaint does not allege any facts evidencing an affirmative action taken by Zulily to transform itself into an "Online Superstore" so as to compete in the alleged relevant market. Quite the opposite, Zulily adopts the FTC/States' allegation that achieving the "scale" necessary to become an Online Superstore is a "significant barrier[] to ent[ering]" the Online Superstores market, Compl. ¶ 52, and that "[p]rospective and emerging entrants lack the network effects that contribute to scale," *id.* ¶ 54. In these and other paragraphs, Zulily comes closer to alleging that it *could not* readily become a "Superstore" rather than that it was prepared to do so. But regardless, the absence of particularized factual allegations demonstrating Zulily's preparedness to enter the alleged Online Superstore market forecloses any basis for Zulily to assert antitrust standing as a prospective entrant. *See Bubar*, 752 F.2d at 450.

**C.    Zulily Fails to Allege That Other Online Markets Are Relevant Antitrust Markets or That Amazon Possesses Market Power or Took Any Anticompetitive Acts in Such Markets.**

Zulily nominally alleges that it has also "suffered anticompetitive harm in at least" several other "online retail markets." Compl. ¶ 68. But it pleads next to no facts about those purported markets, and cannot rely upon them to state a claim.

First, in contrast with the allegations about the Online Superstore market, Zulily does not supply any type of definition of these other markets, much less one adequate to survive a motion to dismiss. "'The outer boundaries of a product market are determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it.'" *Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1045 (9th Cir. 2008) (quoting *Brown Shoe v. United States*, 370 U.S. 294, 325 (1962)). Where "the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, therefore, the relevant market is legally insufficient." *Reilly v. Apple, Inc.*, 578 F. Supp. 3d 1098, 1109 (N.D. Cal. 2022) (citation omitted). While Plaintiff at least

attempts to allege these elements for its "Online Superstores" market, *see* Compl. ¶¶ 33–37, it says nothing at all about the composition of its "additional" relevant markets other than to assign them short descriptive names, *see id.* ¶ 68. In particular, there are no allegations from which the Court could determine the limits of these purported markets, what range of products they contain, why there are no substitutes for the products in those purported markets, or how the alleged existence of these markets would not fundamentally contradict the gerrymandered allegation that "Online Superstores" operate in a market unto themselves. Zulily's "alternative" markets are therefore "facially unsustainable" and fail to state a claim. *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1122–23 (9th Cir. 2018) (citation omitted) (affirming dismissal of inadequately alleged product market); *see also Chapman v. N. Y. State Div. for Youth*, 546 F.3d 230, 237–38 (2d Cir. 2008) (same); *PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*, 615 F.3d 412, 417–19 (5th Cir. 2010) (same).

Second, Zulily does not identify any of the participants in these alleged markets apart from itself and Amazon, and therefore fails to allege that Amazon has market power in any such markets. Sections 1 and 2 of the Sherman Act require a plaintiff to "allege that the defendant has market power within a 'relevant market.'" *Newcal Indus.*, 513 F.3d at 1044. Because these "alternative" markets would not be limited to Online Superstores, they would plainly encompass many, many more retailers who sell the identified categories of products, but have been excluded from the FTC/States' arbitrary "Online Superstores" market. For example, online sellers of "women's clothing," Compl. ¶ 68, include an almost countless number of brands and retailers (e.g., Nordstrom, H&M, Macy's, Marshall's, T.J. Maxx, Saks Fifth Avenue, Bloomingdale's, Neiman Marcus, Bergdorf Goodman, Forever 21, The Gap, Banana Republic, J. Crew, Chico's, Kohl's, Athleta, Lululemon, Madewell, Urban Outfitters, and Zara, to identify just a few). There are no allegations in the Complaint to support the existence of a stand-alone market for women's clothing sold online, but even if there were, there are also no allegations from which it could be concluded that Amazon possesses market power in any such market in which all of those retailers (and many

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

others) would be counted as participants in addition to Walmart, Target, and eBay.[5]  Indeed, that is presumably why the FTC/States arbitrarily chose to allege their narrow "Superstores" market in the first place.  Plaintiff is certainly free to attempt to allege a product market that is not limited to so-called "Online Superstores," but then it must also allege that Amazon has a dominant share of a much more competitive market involving all of the competing online retailers of similar products, and that it has restrained competition in such a market.  Zulily's Complaint does not even attempt to do so.

*　　　　*　　　　*　　　　*

For all of these reasons, Zulily has not adequately alleged antitrust injury arising from the alleged unilateral or conspiratorial restraint of any relevant market.  Accordingly, all of Plaintiffs' antitrust claims fail for that reason alone.

## II.   ZULILY FAILS TO STATE A CLAIM FOR A HORIZONTAL PRICE CONSPIRACY UNDER SECTION 1 OF THE SHERMAN ACT.

Section 1 of the Sherman Act "targets *concerted* anticompetitive conduct."  *Qualcomm*, 969 F.3d at 989.  Zulily, however, does not plausibly allege any concerted conduct in the form of horizontal agreements, and thus its separate claims under Section 1 additionally all fail for the same core reason.  More specifically, though, (a) Zulily's claim of a "hub-and-spoke" conspiracy fails for lack of a rim, and (b) when the remaining vertical agreements that Zulily does allege are analyzed under the rule of reason, they fail plausibly to produce an anticompetitive effect.

### A.   Zulily's "Hub-and-Spoke" Conspiracy Fails to Allege a Rim.

Zulily's First Claim, alleging a "hub-and-spoke" conspiracy, fails because it does not allege sufficient facts to support the existence of such a conspiracy's key element—a "rim."  In the antitrust context, a "hub-and-spoke conspiracy has three elements:  (1) a hub, such as a dominant purchaser; (2) spokes, such as competing manufacturers or distributors that enter into vertical

---

[5] The same pleading failure is true of Plaintiff's other alleged online markets, each of which would have scores of additional participants once the "Superstore" limitation is removed from the definition of the relevant market.

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

agreements with the hub; and (3) the rim of the wheel, which consists of horizontal agreements among the spokes." *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1192 (9th Cir. 2015). This final horizontal component (the rim) distinguishes a hub-and-spoke conspiracy from a series of independent vertical agreements between a common buyer and each of its individual suppliers. "[A] rimless hub-and-spoke conspiracy is not a hub-and-spoke conspiracy at all (for what is a wheel without a rim?); it is a collection of purely vertical agreements." *Id.* at 1192 n.3; *see also Honey Bum v. Fashion Nova*, 63 F.4th 813, 822–23 (9th Cir. 2023) (same).

However, Zulily alleges no facts adequate to support the existence of the obligatory horizontal agreement (rim) among the individual alleged spokes. Zulily asserts that "communications between and among third-party retailers and wholesalers about compliance with Amazon's price-parity agreements occur in the normal course." Compl. ¶ 94. Yet despite the asserted prevalence and expansiveness of these communications, Zulily alleges not a single fact to support them.

Rather, Zulily alleges facts about the communications of "[e]commerce consultants." *Id.* ¶ 91. These consultants allegedly "are aware of Amazon's policies and the effect they will have on their clients' businesses," and "counsel their third-party seller (and wholesale supplier) clients not to offer or allow lower prices than are offered to Amazon." *Id.* Zulily substantiates this alleged role played by ecommerce consultants by pleading only a single fact: "There is a YouTube video created by a former Amazon executive (and current ecommerce consultant) instructing wholesale suppliers how everyone can comply with Amazon's price-parity agreements." *Id.* ¶ 95. But Zulily does not claim that the ecommerce consultants were members of the alleged conspiracy (nor could they be as they are not sellers). The mere fact that one YouTube video allegedly counsels wholesale sellers to act a certain way is far from an allegation that even a *single* wholesaler or third-party seller adopted that strategy in conscious agreement with the hundreds of thousands of other sellers in Amazon's marketplace.

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

Nor, given Zulily's "lack [of] direct evidence of horizontal agreements," does Zulily otherwise allege sufficient facts to "'nudge[]' [its] allegations of horizontal agreements 'across the line from conceivable to plausible.'" *In re Musical Instruments*, 798 F.3d at 1193 (quoting *Twombly*, 550 U.S. at 570). Alleging "parallel conduct in adopting [pricing] policies" alone does not suffice—a plaintiff "must plead 'something more'" and put forth "'some further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557, 560). "Under *Twombly*, ... mere allegations of parallel conduct—even consciously parallel conduct—are insufficient to state a claim under § 1." *Id.*; *see also Twombly*, 550 U.S. at 557 ("[W]ithout ... a meeting of the minds, an account of a defendant's commercial efforts stays in neutral territory.").

## B. Zulily's Alleged Vertical Third-Party Retailer and Wholesaler Conspiracies Fail to State a Claim.

Zulily's Second and Third Claims, alleging that Amazon conspired with third-party retailers and wholesalers, fail because Zulily does not allege that Amazon's practices had "a substantial anticompetitive effect that harms consumers in the relevant market." *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 983 (9th Cir. 2023) (citation omitted). Zulily's Second and Third Claims attempt to allege vertical agreements in restraint of trade, and "courts analyze vertical agreements under the rule of reason." *In re Musical Instruments*, 798 F.3d at 1192 n.3.; *see also California ex rel. Harris v. Safeway, Inc.*, 651 F.3d 1118, 1133 (9th Cir. 2011) (en banc) ("The rule of reason is the presumptive or default standard ....").[6]

"The rule of reason analysis consists of three components: (1) the persons or entities to the agreement intend to harm or restrain competition; (2) an actual injury to competition occurs; and (3) the restraint is unreasonable as determined by balancing the restraint and any justifications or pro-competitive effects of the restraint." *Am. Ad Mgmt. Inc, v. GTE Corp.*, 92 F.3d 781, 789 (9th

---

[6] Even if the Court considered the alleged conspiracy to have both horizontal and vertical components, a "rule of reason analysis would be appropriate for the 'hybrid' conspiracy." *Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1481 (9th Cir. 1986). Likewise, the rule of reason applies because all of the challenged conduct is ancillary to legitimate business relationships between Amazon and its various wholesale suppliers and third-party sellers. *Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*, 9 F.4th 1102, 1109 (9th Cir. 2021).

AMAZON'S MOTION TO DISMISS - 14
(Case No. 2:23-cv-01900-JHC)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

Cir. 1996).  With this analysis, the "goal is to distinguish between restraints with anticompetitive effect that are harmful to the consumer and restraints stimulating competition that are in the consumer's best interest." *Ohio v. Am. Express Co.* ("*AmEx*"), 585 U.S. 529, 541 (2018) (alteration and citation omitted).  Consequently, to satisfy the rule of reason, the alleged violative conduct must have "a *substantial* anticompetitive effect." *Epic Games*, 67 F.4th at 983 (emphasis added).  "[A] complaint's allegation of a practice that may or may not injure competition is insufficient to 'state a claim to relief that is plausible on its face.'" *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1198 (9th Cir. 2012) (quoting *Twombly*, 550 U.S. at 570).

Here, Zulily fails to allege facts in support of its Second and Third Claims that plausibly show Amazon's alleged actions have substantial anticompetitive effects.

First, much of the Complaint focuses on the alleged effect of Amazon's discounting its own directly controlled prices in competition with Zulily.  *See* Compl. ¶¶ 121–23 (allegations that Amazon lowered its price to match the lowest prices available); *id.* ¶¶ 136–39 (same with respect to Zulily specifically).  To the extent those allegations are intended to be part of Zulily's vertical conspiracy claim, they fail as a matter of law.  "Low prices benefit consumers regardless of how those prices are set." *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 223 (1993) (citation omitted).  "[R]egardless of the type of antitrust claim involved," such pricing "do[es] not threaten competition." *Id.* (citation omitted).

Zulily nevertheless complains that Amazon's conduct has allegedly "caus[ed] Zulily to lose profits, a substantial volume of consumer sales, and web traffic."  Compl. ¶ 141.  But "harm to one or more *competitors* will not suffice" to state an antitrust claim. *Qualcomm*, 969 F.3d at 990 (citation omitted).  To award damages to plaintiffs for such procompetitive activity as discounting would "provide them with the profits they would have realized had competition been *reduced*," and thus be "inimical to the purposes" of the antitrust laws, which were "enacted for the protection of competition not competitors." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488 (1977) (emphasis added) (citation omitted).  Zulily thus fails to plead sufficient

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

nonconclusory factual allegations that would support a reasonable inference that Amazon's conduct caused anticompetitive effects.

Second, the remaining alleged conduct—that Amazon supposedly induces third-party sellers and wholesale suppliers to raise their prices in other stores by requesting lower prices in its own store, or by seeking additional discounts on wholesale prices—does not plausibly allege an anticompetitive effect sufficient to support a conspiracy claim by Zulily.

Zulily's allegations (adopted from the FTC/States and California Complaints) that Amazon's unilateral decision to remove certain offers from eligibility as the "Featured Offer" (also referred to as removing offers from the "Buy Box") is wholly inapplicable to Zulily. According to the Complaint, such actions supposedly may cause third-party sellers in certain circumstances to raise the prices that they charge in other marketplaces in order to restore eligibility to be the Featured Offer on Amazon. *See* Compl. ¶¶ 79–80, 84, 87, 89–93. But Zulily does not operate such a marketplace, and therefore no third-party seller could have taken such an action to raise prices in Zulily's store, because Zulily alone was responsible for setting those prices. *See id.* ¶ 9. In an attempt to compensate for that obvious deficiency, Zulily alleges a more convoluted theory that just *four* of its wholesale suppliers stopped selling to Zulily out of concern for the effect its prices had on their sales in Amazon's stores. *See id.* ¶¶ 130–35. But even taking those vague anecdotes at face value, they do not rise to the level of alleging the necessary "substantial anticompetitive effect," *Epic Games*, 67 F.4th at 983, necessary to support antitrust violations over a market involving the "breadth" of the alleged "Online Superstore" market, *see* Compl. ¶ 34.a.

Likewise, Plaintiff's attempt to allege a series of vertical conspiracies with Amazon's wholesalers (Third Claim) fails to allege any anticompetitive effect on Zulily. The Complaint repeats California's allegations about so-called "Minimum Margin Agreements" ("MMAs") lowering costs to Amazon and indirectly increasing costs to other sellers*, see id.* ¶¶ 99–106, but it never alleges that such agreements had any effect in raising Zulily's wholesale purchase costs. To the contrary, the sections of the Complaint entitled "Wholesale Minimum Margin Agreements,"

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

"Zulily's Antitrust Injury," and "Harm to Competition*," id.* ¶¶ 99–106, 140–45, 146–48, are entirely silent on how such agreements may have affected Zulily's own wholesale acquisition costs or otherwise impaired its ability to compete with Amazon for the retail sale of products purchased at wholesale. The allegations accordingly fail to state a claim. *See Epic Games*, 67 F.4th at 983; *Qualcomm*, 969 F.3d at 990.

## III. ZULILY FAILS TO STATE CLAIMS OF ANTICOMPETITIVE MONOPOLY MAINTENANCE UNDER SECTION 2 OF THE SHERMAN ACT.

"Whereas § 1 of the Sherman Act targets *concerted* anticompetitive conduct, § 2 targets *independent* anticompetitive conduct." *Qualcomm*, 969 F.3d at 989–90. Specifically, to state a claim under Section 2, "a plaintiff must show: (a) the possession of monopoly power in the relevant market; (b) the willful acquisition or maintenance of that power; and (c) causal antitrust injury." *Id.* at 990 (citation omitted). However, to "safeguard the incentive to innovate, the possession of monopoly power will not be found unlawful unless it is accompanied by an element of anticompetitive *conduct*." *Id.* (alteration and citation omitted). As analyzed under the rule of reason,[7] therefore, Section 2 requires plausibly alleging facts showing that an alleged monopolist engaged in anticompetitive *conduct* that has an anticompetitive *effect*. *See id.* at 991.

For the same reasons discussed above regarding Zulily's Section 1 claims, *see* Section II.B., Zulily has not shown an anticompetitive effect. *See, e.g.*, *Qualcomm*, 969 F.3d at 991 ("Regardless of whether the alleged antitrust violation involves concerted anticompetitive conduct under § 1 or independent anticompetitive conduct under § 2, the ... test under the rule of reason is essentially the same," and thus "courts often review claims under each section simultaneously.").

Additionally, Zulily also fails to plausibly allege under Section 2 anticompetitive *conduct*.[8] Zulily's Section 2 claims essentially boil down to an allegation that Amazon engages in

---

[7] Zulily's Complaint does not contend for its Section 2 claims that a *per se* or quick-look analysis could apply, as it does for its Section 1 claims. *See* Compl. ¶¶ 187–215.

[8] "Whether specific conduct is anti-competitive is a question of law ...." *SmileCare*, 88 F.3d at 783.

AMAZON'S MOTION TO DISMISS - 17
(Case No. 2:23-cv-01900-JHC)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

anticompetitive conduct by coercing "its third-party retailers and its wholesale suppliers not to offer products on Zulily ... at prices below Amazon's." Compl. ¶ 193. But because Zulily set its own prices and did not operate a marketplace in which third-party sellers could set their own prices, *see id.* ¶ 9, that allegation makes sense only as a reference to Amazon's alleged behavior of matching or beating the prices that Zulily set and attempted to market as the lowest-priced versions in the marketplace. Far from anticompetitive, Amazon's efforts to ensure that it too offers customers similarly low prices is a practice that goes to the very essence of competition.

"Antitrust law does not seek to punish economic behavior that benefits consumers." *Coronavirus Rep. v. Apple, Inc.*, 85 F.4th 948, 957 (9th Cir. 2023). Nor does it target businesses for succeeding due to "'a superior product'" or "'business acumen.'" *Cal. Comput. Prods., Inc. v. Int'l Bus. Machs. Corp.*, 613 F.2d 727, 742 (9th Cir. 1979) (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 571 (1966)). Therefore, even the alleged possession of monopoly power will "not be found unlawful unless it is accompanied by an element of anticompetitive conduct," because to conclude otherwise would chill "the incentive to innovate." *Verizon Commc'ns Inc. v. Law Offs. of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004) (emphasis omitted). The antitrust laws are directed "not against conduct which is competitive, even severely so, but [only] against conduct which unfairly tends to destroy competition itself." *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 458 (1993).

*First*, Zulily's allegation that Amazon's practice of matching discounted prices is "anti-discounting" conduct that prevents Zulily from "be[ing] able to compete at all in the relevant market," Compl. ¶ 196, does not state a claim. As an initial matter, matching rivals' discounts is not, in Zulily's borrowed jargon, an "anti-discounting" program. Instead, it *is* itself "a classic form of price competition." *Id.* ¶ 125. And the antitrust laws affirmatively encourage such conduct. Again, "[l]ow prices benefit consumers regardless of how those prices are set, and so long as they are above predatory levels, they do not threaten competition." *Brooke Grp.*, 509 U.S. at 223 (citation omitted); *see also ibid.* ("[W]e have rejected ... the notion that above-cost prices that are

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400 FAX +1.206.274.6401

below general market levels or the costs of a firm's competitors inflict injury to competition cognizable under the antitrust laws."). Indeed, Zulily itself engaged in this very same price-matching behavior. *See* Compl. ¶ 131.

*Second*, alleging that Amazon's low prices caused Zulily to lose profits, *see, e.g.*, *id.* ¶ 141, or that it foreclosed "Zulily from gaining scale through discounted pricing," *id.* ¶ 142, fares no better. "To hold that the antitrust laws protect competitors from the loss of profits due to ... price competition would, in effect, render illegal any decision by a firm to cut prices in order to increase market share. The antitrust laws require no such perverse result." *Brooke Grp.*, 509 U.S. at 223 (citation omitted); *see also Murphy Tugboat Co. v. Crowley*, 658 F.2d 1256, 1259 (9th Cir. 1981) ("The antitrust laws do not require the erection of a price umbrella for the benefit of inefficient competitors."). As the Supreme Court has made clear for decades, "competition for increased market share[] is not activity forbidden by the antitrust laws." *Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 116 (1986).

*Overall*, the import of this well-settled law is clear: attempting to distinguish between a "good" price cut and a "bad" price cut that could expose a company to substantial liability would encourage retailers toward *no* price cuts, thus "chill[ing] the very conduct the antitrust laws are designed to protect." *AmEx*, 585 U.S. at 546 (quoting *Brooke Grp.*, 509 U.S. at 226); *accord Weyerhaeuser Co. v. Ross-Simmons Hardwood Lumber Co.*, 549 U.S. 312, 319 (2007) ("We were particularly wary of allowing recovery for above-cost price cutting because allowing such claims could, perversely, chill legitimate price cutting, which directly benefits consumers." (cleaned up)). Zulily's theory regarding price-matching would expose retailers to legal risk whenever they lowered their prices to meet competition, and prices would predictably rise as a result. That is not the law. Indeed, precisely because *Brooke Group* forecloses the type of Sherman Act Section 2 claims asserted here, a House Subcommittee previously urged Congress to "overrid[e] the

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

1  Supreme Court's decision[] in ... *Brooke Group*."[9]  But Congress has enacted no such legislation,

2  and *Brooke Group* remains the law.  A Sherman Act claim based on Amazon's discount-matching

3  practices is thus untenable.

4  *Finally*, to the extent Zulily's monopolization claim is premised upon the remaining alleged

5  conduct, it fails for the same reasons as its conspiracy claims.  The allegation that Amazon induced

6  third-party sellers to raise their prices in other marketplaces, *see* Compl. ¶¶ 79–80, 84, 87, 89–93,

7  cannot have harmed a store like Zulily that does not host such sellers in the first place, *see id.* ¶ 9.

8  There is no allegation plausibly explaining why higher prices charged by third-party sellers in

9  other marketplaces would have had any detrimental effect on Zulily, or why it would not then have

10  had an ability to undercut all of those retailers on price.  Likewise, there is no well-pleaded

11  allegation that Amazon's agreements with wholesalers interfered in any way with Zulily's ability

12  to set its own prices for any of the products that it sold.  The Complaint does not, for example,

13  include even a single anecdotal allegation of a wholesaler telling Zulily it needed to raise its

14  wholesale prices to avoid needing to compensate Amazon under a minimum margin agreement.

15  If that were something that had occurred, Zulily should know about it and be able to allege that in

16  support of its claims.  That it has not done so indicates the extent to which it is merely attempting

17  to parrot the allegations of other Complaints, without plausibly identifying any harm that it

18  sustained directly.

19  **IV.   ZULILY'S STATE-LAW CLAIMS ALSO SHOULD BE DISMISSED.**

20  For the same reasons that Zulily's federal claims fail, so too do its analogous state claims

21  under the Washington Consumer Protection Act ("CPA"), Wash Rev. Code Ann. §§ 19.86.010 to

22  19.86.920.  "[C]ourts are directed to interpret the CPA in light of federal court decisions

23  interpreting federal antitrust law."  *Ass'n of Wash. Pub. Hosp. Dists. v. Philip Morris Inc.*, 241

24  F.3d 696, 706 (9th Cir. 2001); *see also* Wash. Rev. Code Ann. § 19.86.920 ("It is the intent of the

25

26  [9] Majority Staff of H. Subcomm. on Antitrust, Com. & Admin. Law of the Comm. on the Judiciary, 116th Cong., *Investigation of Competition in Digital Markets* at 397 (Comm. Print 2020).

AMAZON'S MOTION TO DISMISS - 20
(Case No. 2:23-cv-01900-JHC)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

legislature that, in construing this act, the courts be guided by final decisions of the federal courts ... interpreting the various federal statutes dealing with the same or similar matters ....").  Thus, a "conclusion with regard to the [federal] claim disposes of the[ related state] claims." *Omega Env't, Inc. v. Gilbarco, Inc.*, 127 F.3d 1157, 1165 n.8 (9th Cir. 1997); *see also PBTM LLC v. Football Nw., LLC*, 511 F. Supp. 3d 1158, 1178 (W.D. Wash. 2021) ("The Court's analysis of [the plaintiff's] federal antitrust claims extends to its state law claims under the [CPA], which are patterned after Sections 1 and 2 of the Sherman Antitrust Act.").

Indeed, Zulily expressly alleges that its Sixth Claim is intended to mirror the First, Second, and Third federal antitrust claims.  *See* Compl ¶ 217.[10]  Likewise, Zulily expressly alleges its Seventh Claim is intended to mirror the Fourth and Fifth federal antitrust claims.  *See* Compl ¶ 227.[11]  Consequently, dismissal of the federal antitrust claims also warrants dismissal of Zulily's state antitrust claims (Sixth and Seventh Claims) premised upon the same facts and legal standard.

Finally, although Zulily's Eighth Claim, which alleges a violation of Washington Revised Code Section 19.86.020, does not expressly cross-reference a Claim under the Sherman Act (as the Sixth and Seventh Claims do), it nevertheless premises its claim on the same alleged conduct. For instance, Zulily contends that "Amazon has orchestrated a hub-and-spoke scheme to eliminate price competition among online superstores," Compl. ¶ 235.a—the same allegation it makes in its First Claim—and that "Amazon has colluded horizontally and vertically with its third-party resellers and its wholesale suppliers to eliminate price competition among online superstores," *id.* ¶ 235.b—the same allegation it makes in its Second and Third Claims.  Because "Plaintiff's alleged grounds for relief under the CPA are indistinguishable from those underlying [its] federal antitrust

---

[10] *Compare* 15 U.S.C. § 1 ("Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal."), *with* Wash. Rev. Code Ann. § 19.86.030 ("Every contract, combination, in the form of trust or otherwise, or conspiracy in restraint of trade or commerce is hereby declared unlawful.").

[11] *Compare* 15 U.S.C. § 2 (making it unlawful to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States"), *with* Wash. Rev. Code Ann. § 19.86.040 ("It shall be unlawful for any person to monopolize, or attempt to monopolize or combine or conspire with any other person or persons to monopolize any part of trade or commerce.").

AMAZON'S MOTION TO DISMISS - 21
(Case No. 2:23-cv-01900-JHC)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

claim[s]," the Court should "dismiss[] the CPA claim on the same basis." *Kassner v. Kadlec Reg'l Med. Ctr.*, 2012 WL 523675, at *8 (E.D. Wash. Feb. 15, 2012); *see also Randy's Ring & Pinion Serv. Inc. v. Eaton Corp.*, 2009 WL 10727790, at *9 (W.D. Wash. Nov. 16, 2009) (granting a motion to dismiss a § 19.86.020 claim where the complaint did "not specifically identify any unfair or deceptive trade practice other than those alleged in the antitrust claims").

For avoidance of doubt, however, even were Zulily's Eighth Claim not duplicative of its earlier Claims, it would still fail.[12] Zulily's only allegation conceivably distinct from those in its earlier Claims is that Amazon "engaged in acts and practices that have the capacity to—and did—deceive a substantial portion of the public, i.e., by falsely representing to consumers that its prices are the lowest and/or competitive leading consumers to believe that they paid fair—and not artificially inflated—prices." Compl. ¶ 237. But this allegation is wholly conclusory. And "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Not once in its Complaint does Zulily describe an instance of Amazon's "falsely representing to consumers that its prices are the lowest." Compl. ¶ 237. For one, the Complaint alleges no facts to substantiate such a representation. But more fundamentally, the allegation is contrary to the whole thrust of the Complaint, which alleges that Amazon engages in anticompetitive conduct by requiring its prices to be the lowest—meaning that even were the Complaint to allege such a representation, it would not be "false."[13]

In sum, therefore, all of Zulily's state-law claims fail.

---

[12] "[T]o prevail in a private CPA action ..., a plaintiff must establish five distinct elements: (1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 533 (Wash. 1986) (en banc).

[13] Further revealing the threadbare nature of these allegations, this alleged deceptive harm has no overlap with the harm Zulily allegedly suffered—that it "los[t] profits, a substantial volume of consumer sales, and web traffic." Compl. ¶ 141. And to state a claim under Section 19.86.020, a complaint must show that "additional plaintiffs have been or will be injured ... in *exactly the same fashion*." *Buffets, Inc. v. Klinke*, 73 F.3d 965, 970 (9th Cir. 1996) (emphasis added) (quoting *Hangman Ridge Training Stables, Inc., v. Safeco Title Ins. Co.*, 719 P.2d 531, 538 (Wash. 1986)).

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400   FAX +1.206.274.6401

**CONCLUSION**

For the foregoing reasons, Amazon respectfully requests that the Court dismiss Zulily's complaint in its entirety.

DATED this 6th day of May, 2024.

*I certify that this memorandum contains 8,150 words, in compliance with the Local Civil Rules.*

**MORGAN, LEWIS & BOCKIUS LLP**

By: *s/ Patty A. Eakes*
Patty A. Eakes, WSBA #18888
Molly A. Terwilliger, WSBA #28449
1301 Second Avenue, Suite 3000
Seattle, WA 98101
Phone: (206) 274-6400
Email: patty.eakes@morganlewis.com
　　　 molly.terwilliger@morganlewis.com

**WILLIAMS & CONNOLLY LLP**

John E. Schmidtlein (*pro hac vice pending*)
Kevin M. Hodges (*pro hac vice pending*)
Carl R. Metz (*pro hac vice pending*)
Carol J. Pruski (*pro hac vice pending*)
William M. Schmidt (*pro hac vice pending*)
680 Maine Avenue SW
Washington, DC 20024
Phone: (202) 434-5000
Email: jschmidtlein@wc.com
　　　 khodges@wc.com
　　　 cmetz@wc.com
　　　 cpruski@wc.com
　　　 wschmidt@wc.com

*Attorneys for Defendant Amazon.com, Inc.*

AMAZON'S MOTION TO DISMISS - 23
(Case No. 2:23-cv-01900-JHC)

**MORGAN, LEWIS & BOCKIUS LLP**
ATTORNEYS AT LAW
1301 SECOND AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98101
TEL +1.206.274.6400　FAX +1.206.274.6401