THE HONORABLE JOHN H. CHUN

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ZULILY, LLC,

           Plaintiff,

     v.

AMAZON.COM, INC.,

           Defendant.

Case No. 2:23-cv-01900 JHC

**ZULILY'S OPPOSITION TO AMAZON'S MOTION TO DISMISS**

NOTE ON MOTION CALENDAR:
June 3, 2024

*ORAL ARGUMENT REQUESTED*

ZULILY'S OPP'N TO AMAZON'S MTD
Case No. 2:23-cv-01900

Bona Law PC
4275 Executive Square, Suite 200
La Jolla, CA 92037
858.964.4589

# TABLE OF CONTENTS

FACTS................................................................................................................ 2

LEGAL STANDARD ......................................................................................... 5

ARGUMENT....................................................................................................... 5

   I.   ZULILY HAS ANTITRUST STANDING.................................................. 5

   II.  AMAZON'S CONDUCT IS ILLEGAL PER SE UNDER SHERMAN
       ACT SECTION 1........................................................................................ 9

      A. Amazon's Retail Price Fix Is *Per Se* Illegal ................................. 9

      B. Amazon's Price-Fixing Agreements with Resellers
         (and Wholesalers) Are *Per Se* Illegal ......................................... 10

        1. Additionally, Zulily has plausibly alleged a *per se* illegal
          *Klor's*-style "hub-and-spoke" conspiracy. ............................... 13

        2. Even if the Court concludes that a capital-A agreement is
          required at the rim, Zulily plausibly alleged that too. ....................... 17

        3. The Court need not resolve the mode of analysis now ..................... 20

      C. Amazon's Conduct Is Illegal Under the Rule of Reason ....................... 21

   III.  AMAZON ABUSED ITS MONOPOLY POWER ....................................... 23

   IV.  ZULILY'S STATE-LAW CLAIMS ARE ALSO PLAUSIBLE.................... 25

CONCLUSION .................................................................................................. 26

ZULILY'S OPP'N TO AMAZON'S MTD

Case No. 2:23-cv-01900 – i

Bona Law PC
4275 Executive Square, Suite 200
La Jolla, CA 92037
858.964.4589

# TABLE OF AUTHORITIES

**Cases**                                                                  **Page(s)**

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ................................................................5

*Beltz Travel Serv., Inc. v. Int'l Air Transp. Ass'n,*
620 F.2d 1360, 1367 (9th Cir. 1980) .............................17

*Billing Assocs. Nw., LLC v. Addison Data Servs., LLC,*
C20-1854RSM, 2022 U.S. Dist. LEXIS 208039 (W.D. Wash.
Nov. 16, 2022)...............................................................27

*Bourns, Inc. v. Raychem Corp.,*
331 F.3d 704 (9th Cir. 2003) ........................................7, 8

*Brown v. Amazon.com, Inc.,*
No. 2:22-cv-00965-JHC, 2023 U.S. Dist. LEXIS 158801
(W.D. Wash. Sept. 7, 2023)......................................21, 24

*Brown v. Pro Football,*
518 U.S. 231 (1996) .......................................................16

*Bubar v. Ampco Foods, Inc.,*
752 F.2d 445 (9th Cir. 1985) ...........................................7

*In re Cal. Bail Bond Antitrust Litig.,*
511 F. Supp. 3d 1031 (N.D. Cal. 2021) ...............17, 18, 20

*Cernuto, Inc. v. United Cabinet Corp.,*
595 F.2d 164 (3d Cir. 1979)............................................11

*Coca-Cola Co. v. Omni Pac. Co.,*
No. C 98-0784 SI, 2000 U.S. Dist. LEXIS 17089
(N.D. Cal. Sept. 25, 2000) .............................................11

*Com-Tel, Inc. v. DuKane Corp.,*
669 F.2d 404 (6th Cir.1982) ..........................................11

*Cont'l T.V. v. GTE Sylvania,*
433 U.S. 36 (1977) ........................................................10

*Copperweld Corp. v. Independence Tube Corp.,*
467 U.S. 752 (1984) ......................................................23

PLAINTIFF'S OPPOSITION TO DEFENDANT'S           Bona Law PC
MOTION TO DISMISS                    4275 Executive Square, Suite 200
CASE NO. 2:23-cv-01900 – ii                 La Jolla, CA 92037
858.964.4589

*Dark Catt Studios Holdings, Inc. v. Valve Corp.*,
No. C21-0872-JCC, 2022 U.S. Dist. LEXIS 82541
(W.D. Wash. May 6, 2022) .............................................................................. 24

*Darush v. Revision LP*,
No. CV 12-10296 GAF (AGRx), 2013 U.S. Dist. LEXIS 60084
(C.D. Cal. Apr. 10, 2013) ................................................................................. 25

*DAT Sols., LLC v. Convoy, Inc.*,
No. 3:22-cv-00088-IM, 2023 U.S. Dist. LEXIS 70734
(D. Or. Apr. 24, 2023) ..................................................................................... 21

*De Coster v. Amazon.com, Inc.*,
No. C21-693RSM, 2023 U.S. Dist. LEXIS 12365 (W.D. Wash.
Jan. 24, 2023) ................................................................................................... 24

*In re Deere & Co. Repair Serv. Antitrust Litig.*,
No. 3:22-cv-50188; MDL No. 3030, 2023 U.S. Dist. LEXIS 210516,
(N.D. Ill. Nov. 27, 2023) ...................................................................... 16, 17, 18

*Dimidowich v. Bell & Howell*,
803 F.2d 1473 (9th Cir. 1986) ......................................................................... 13

*In re eBay Seller Antitrust Litig.*,
545 F. Supp. 2d 1027 (N.D. Cal. 2008) ........................................................... 25

*In re EpiPen Mktg., Sales Practices & Antitrust Litig.*,
44 F.4th 959 (10th Cir. 2022) .......................................................................... 25

*FTC v. Amazon.com, Inc.*,
No. 2:23-cv-01495-JHC (W.D. Wash. filed Sept. 26, 2023)............................. 4

*Frame-Wilson v. Amazon.com, Inc.*,
591 F. Supp. 3d 975, 990 (W.D. Wash. 2022)....................................... 9, 12, 13

*Frame-Wilson v. Amazon.Com, Inc.*,
664 F. Supp. 3d 1198 (W.D. Wash. 2023).............................................. *passim*

*Gatan, Inc. v. Nion Co.*,
No. 15-cv-01862-PJH, 2017 U.S. Dist. LEXIS 129127
(N.D. Cal. Aug. 14, 2017) .......................................................................... 20, 21

*Goodyear Tire & Rubber Co. v. Whiteman Tire*,
86 Wash. App. 732, 935 P.2d 628 (1997) ........................................................ 26

*In re High-Tech Emp. Antitrust Litig.*,
856 F. Supp. 2d 1103 (N.D. Cal. 2012) .............................................. 17, 21, 22

ZULILY'S OPP'N TO AMAZON'S MTD – iii
Case No. 2:23-cv-01900

Bona Law PC
4275 Executive Square, Suite 200
La Jolla, CA 92037
858.964.4589

*Honey Bum, LLC v. Fashion Nova, Inc.,*
    63 F.4th 813 (9th Cir. 2022) ......................................................... 13

*Interstate Cir., Inc. v. United States,*
    306 U.S. 208 (1939) ........................................................... 14, 15, 16

*Kendall v. Visa U.S.A., Inc.,*
    518 F.3d 1042 (9th Cir. 2008) ........................................................ 5

*Klor's, Inc. v. Broadway-Hale Stores, Inc.,*
    359 U.S. 207 (1959) ................................................................. 13, 14

*Leegin Creative Leather Prods. v. PSKS, Inc.,*
    551 U.S. 877 (2007) ................................................................*passim*

*In re Musical Instruments & Equip. Antitrust Litig.,*
    798 F.3d 1186 (9th Cir. 2015) ................................... 15, 17, 19, 20

*Mailand v. Burckle,*
    20 Cal. 3d 367 (1978)................................................................... 25

*Nastasi & Assocs. v. Bloomberg, L.P.,*
    No. 20-CV-5428 (JMF), 2022 U.S. Dist. LEXIS 172854
    (S.D.N.Y. Sept. 23, 2022) ...................................................... 16, 20

*NCAA v. Bd. of Regents,*
    468 U.S. 85 (1984) ....................................................................... 25

*Newcal Indus., Inc. v. Ikon Off. Sol.,*
    513 F.3d 1038 (9th Cir. 2008) ........................................................ 9

*N. Pac. Ry. v. United States,*
    356 U.S. 1 (1958) ......................................................................... 11

*Northshore Sheet Metal, Inc. v. Sheet Metal Workers Int'l Ass'n,*
    *Local 66*, No. 15-CV-1349 BJR, 2018 U.S. Dist. LEXIS 163327
    (W.D. Wash. Sept. 24, 2018) ...................................................... 20

*Novell, Inc. v. Microsoft Corp.,*
    731 F.3d 1064 (10th Cir. 2021) .................................................... 23

*Ohio v. Am. Express Co.,*
    585 U.S. 529 (2018) ..................................................................... 16

*Pac. Express, Inc. v. United Airlines, Inc.,*
    959 F.2d 814 (9th Cir. 1992) ....................................................... 23

ZULILY'S OPP'N TO AMAZON'S MTD – iv
Case No. 2:23-cv-01900

Bona Law PC
4275 Executive Square, Suite 200
La Jolla, CA 92037
858.964.4589

*Parks v. Watson*,
716 F.2d 646 (9th Cir. 1983) ........................................................ 8

*PBTM LLC v. Football Nw., LLC*,
511 F. Supp. 3d 1158 (W.D. Wash. 2021) .................................. 27

*In re RealPage, Inc. Rental Software Antiturst Litig. (No. II)*,
No. 3:23-md-03071; MDL No. 3071, 2003 U.S. Dist. LEXIS
230200 (M.D. Tenn. Dec. 28, 2023) ............................................ 19

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
806 F.2d 1393 (9th Cir. 1986) ..................................................... 27

*Somers v. Apple, Inc.*,
Nos. C 05-00037 JW, C 07-06507 JW, 2010 U.S. Dist. LEXIS
64772 (N.D. Cal. June 29, 2010) ........................................... 24, 25

*State v. Amazon.com, Inc.*,
No. CGC-22-601826 (Cal. Superior Ct., S.F. Cnty. filed Sept.
15, 2022) ...................................................................................... 4, 22

*Toys "R" Us v. FTC*,
221 F.3d 928 (7th Cir. 2000) ......................................... 14, 15, 19

*Twin City Sportservice, Inc. v. Charles O. Finley & Co.*,
676 F.2d 1291 (9th Cir. 1982) ..................................................... 22

*United States v. Apple, Inc.*,
791 F.3d 290 (2d Cir. 2015)............................................. 9, 14, 15

*United States v. E.I. du Pont de Nemours & Co.*,
351 U.S. 377 (1956) ..................................................................... 25

*United States* v. *Gen. Motors Corp.*,
384 U.S. 127 (1966) ..................................................................... 16

*United States v. Grinnell Corp.*,
384 U.S. 563 (1966) ..................................................................... 23

*United States v. Microsoft Corp.*,
253 F.3d 34 (D.C. Cir. 2001) ....................................................... 23

*Wolfire Games, LLC v. Valve Corp.*,
No. C21-0563-JCC, 2022 U.S. Dist. LEXIS 82561 (W.D. Wash.
May 6, 2022) ................................................................................. 24

ZULILY'S OPP'N TO AMAZON'S MTD – v
Case No. 2:23-cv-01900

Bona Law PC
4275 Executive Square, Suite 200
La Jolla, CA 92037
858.964.4589

## Statutes and Rules

15 U.S.C. §§ 1–7................................................................*passim*

Fed. R. Civ. P. 12................................................................9

15 U.S.C. § 12................................................................13, 26

Bona Law PC
4275 Executive Square, Suite 200
La Jolla, CA 92037
858.964.4589

Amazon wants to control prices. Not just the prices it charges consumers. Nor even just the prices it pays to its suppliers. Amazon wants to control the prices that **every** seller charges **every** consumer to ensure that no one sells anything for less than Amazon. Said another way, in the parlance of antitrust law, Amazon wants to impose horizontal price restraints.

But Amazon knows that it cannot directly agree on price with its horizontal competitors without risking criminal prosecution. So, Amazon disguises its horizontal price restraints by putting them into agreements with its resellers and wholesalers and then denominating them "vertical" price restraints. But the restraints challenged by Zulily—and by the Federal Trade Commission and eighteen state antitrust enforcers—do not govern vertical aspects of Amazon's relationships with its resellers and wholesalers. Rather, the restraints govern (and raise) the prices Amazon and its competitors charge directly to consumers. Antitrust laws deal with function, not form, and the Court should not be fooled by Amazon's subterfuge.

Nor should the Court find any merit in Amazon's motion to dismiss. First, Amazon is incorrect that Zulily lacks standing. Zulily explicitly alleges that it was a competitor in the relevant market and therefore has antitrust standing. Amazon's arguments to the contrary are based on misconstruing the Complaint and should be rejected.

Second, Zulily has sufficiently alleged that Amazon intentionally created horizontal price restraints to prevent price competition; restraints that should be judged as *per se* illegal. This is true regardless of whether the agreements creating those horizontal restraints are viewed as a hub-and-spoke conspiracy, because the agreements have obvious anticompetitive effects without the redeeming procompetitive benefits normally attaching to vertical agreements. In any case, the Court need not decide this issue now, before the parties can discover facts about the nature and effects of the price fix.

Bona Law PC
4275 Executive Square, Suite 200
La Jolla, CA 92037
858.964.4589

Third, Zulily plausibly alleges that Amazon's conduct had anticompetitive effects in support of its monopolization claims. Indeed, Amazon's arguments have already been rejected by this Court in related class-action litigation, and they should fare no better here.

Finally, just as Zulily has adequately pled its federal claims, so too has it adequately pled its state law claims.

For these reasons, as elaborated below, the Court should deny Amazon's motion to dismiss in its entirety.

### FACTS

Amazon is the nation's largest online retailer selling almost all categories of consumer goods imaginable. ¶ 5.[1] It sells goods itself on the Amazon platform directly to consumers and hosts third-party retailers who sell their goods on the Amazon platform in exchange for paying Amazon fees. ¶ 8. Amazon also purchases products wholesale. ¶ 9.

Amazon is critical to the survival of its third-party retailers and wholesalers. While some third-party retailers sell products "off Amazon" (on their own websites and on other online stores), they generate the vast majority (81%–100%) of their revenues from sales on Amazon. ¶¶ 10–11. Amazon sales also account for 20% to 30% of all sales of third-party retailers and wholesalers (combined), and those sales cannot be replicated off Amazon. ¶ 13.

One reason Amazon is so crucial to suppliers is the market power it enjoys over online retailer consumers. According to Amazon, its 160 million Prime-member households spend more than non-Prime households online and make twice as many online purchases on Amazon than off. ¶¶ 22, 24.

With Amazon's control over suppliers and consumers, it is a monopolist in the market for online superstores—online retail stores with an extensive breadth

---

1. All paragraph references are to the Complaint (ECF 1), filed December 11, 2023, unless otherwise indicated.

ZULILY'S OPP'N TO AMAZON'S MTD – 2
Case No. 2:23-cv-01900

Bona Law PC
4275 Executive Square, Suite 200
La Jolla, CA 92037
858.964.4589

and depth of product selection that spans multiple categories and a range of different brands. ¶ 34. Online superstores compete not just for retail sales, but also for suppliers (resellers and wholesalers) that want their products to reach consumers. ¶ 31.

There is direct evidence of Amazon's monopoly power in the online superstore market, including that its network of third-party retailers and wholesalers has grown despite the ever-increasing fees that Amazon charges them. ¶ 43. As those fees get passed through to consumers, on-Amazon retail prices have increased as well, yet Amazon's customer network has only gotten larger. ¶ 46.

Rather than compete on price, Amazon has leveraged its market control to induce its network of third-party resellers and wholesalers to agree to set retail prices—but not the retail prices charged **by Amazon**. The agreements fix the retail prices charged **off Amazon**, i.e., by Amazon's horizontal competitors, and specifically by Zulily. Amazon accomplished this through a series of price-parity (¶¶ 76–98) and minimum-margin agreements ("MMAs") (¶¶ 99–106) that Amazon imposed on all of its third-party retailers and wholesalers, respectively. The price agreements do not dictate the terms of doing business with Amazon or the use of Amazon's platform. They dictate the terms of doing business off Amazon by forcing third-party retailers and wholesalers to agree that their products are not sold off Amazon at retail prices lower than Amazon's. ¶¶ 69, 76–98, 99–106, 153–155.

Amazon's suppliers understand that every other supplier is adhering to Amazon's price-parity and MMAs. Suppliers exchange information about the fact of compliance, and how to comply, directly with each other, with their off-Amazon retailers, and through ecommerce consultants. ¶¶ 91–94.

And even though the pricing agreements are against suppliers' individual interests, because they prohibit suppliers from gaining scale and engaging in

Bona Law PC
4275 Executive Square, Suite 200
La Jolla, CA 92037
858.964.4589

price competition off-Amazon, compliance with the agreements is widespread. Suppliers are aware that Amazon closely monitors compliance (via its Competitive Monitoring Team) and Amazon punishes violators when their off-Amazon prices are too low. One particularly effective punishment is Amazon's practice of disqualifying offending products from the "Buy Box." The Buy Box is the main (and only obvious) mechanism shoppers use to make a purchase on Amazon. Elimination from the Buy Box makes it difficult (or even impossible) for a shopper to discover a supplier's product on Amazon, threatening that supplier's survival (both on and off Amazon). ¶¶ 108–116.

This same price-fixing scheme is the subject of the Federal Trade Commission and seventeen states' lawsuits against Amazon, and separately, the California Attorney General's *FTC v. Amazon.com, Inc.*, No. 2:23-cv-01495-JHC (W.D. Wash. filed Sept. 26, 2023) ("FTC Compl."); *see also State v. Amazon.com, Inc.*, No. CGC-22-601826 (Cal. Super. Ct., S.F. Cnty. filed Sept. 15, 2022) ("Cal. Compl."). The FTC and those states have investigated these same price-parity and MMAs, concluding that Amazon's conduct violates federal and state antitrust laws and has caused widespread harm to consumers who paid supracompetitive prices both on and off Amazon and who lost the choice to shop off Amazon for thousands of products, including at Zulily. ¶¶ 146–148.

Zulily has also suffered antitrust injury. Once Amazon recognized Zulily as an emerging competitive threat as an online superstore, Amazon did not choose to compete on the merits, but colluded and abused its monopoly power to eliminate Zulily from the market. Perhaps most significantly, the scheme made it impossible for Zulily to charge retail prices lower than Amazon's. When Zulily did try to compete against Amazon on price, Zulily's suppliers, who could not afford to lose Amazon sales, were forced to (i) instruct Zulily to increase its list prices for the at issue goods to be at least as high as Amazon's, (ii) pull the offending product(s) from Zulily, (iii) leave Zulily altogether; and/or (iv)

ZULILY'S OPP'N TO AMAZON'S MTD – 4
Case No. 2:23-cv-01900

Bona Law PC
4275 Executive Square, Suite 200
La Jolla, CA 92037
858.964.4589

sometimes not even contact Zulily. In just one year's time, Amazon's conduct caused nearly half of the suppliers who sold to both Amazon and Zulily to end their relationships with Zulily. ¶¶ 141–145.

The result is what Amazon desired: Zulily could not compete with Amazon on price without bleeding suppliers who feared Amazon's punishments. Without suppliers, Zulily could not gain the scale necessary to compete with Amazon or with any other online superstore. *Id.* Currently, and as a result of Amazon's anticompetitive conduct, Zulily is insolvent and in the process of liquidation.

Zulily alleges Section 1 and 2 Sherman Act claims against Amazon for price-fixing and monopoly abuses, as well as state-law competition violations. Amazon has moved to dismiss.

## LEGAL STANDARD

An antitrust plaintiff must plead "enough factual matter (taken as true) to suggest" an antitrust violation. There is no "probability requirement" at the pleading stage. It "simply calls for enough fact[s] to raise a reasonable expectation" that discovery will reveal supportive evidence. *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007)). The court must "credit all reasonable inferences arising from" the "complaint's factual allegations" and the complaint avoids dismissal with "any set of facts" that would entitle the plaintiff to relief. *Frame-Wilson v. Amazon.com, Inc.*, 664 F. Supp. 3d 1198, 1204 (W.D. Wash. 2023).

## ARGUMENT

## I.    ZULILY HAS ANTITRUST STANDING

Amazon argues that Zulily lacks antitrust standing because it is not an actual or prospective "participant in the primary relevant market alleged in the Complaint." ECF 25 at 6. Amazon is wrong. Zulily explicitly alleges that it competed in the relevant market:

ZULILY'S OPP'N TO AMAZON'S MTD – 5
Case No. 2:23-cv-01900

Bona Law PC
4275 Executive Square, Suite 200
La Jolla, CA 92037
858.964.4589

- "Zulily also competes in the relevant market as an online retailer offering a 'breadth and depth' of product selection that cannot be replicated in a physical store and that limited-selection online stores lack." ¶ 59;
- "The FTC identified Zulily as an 'emerging' competitor in the relevant market since at least 2019." ¶ 60; and
- "Amazon, too, recognized Zulily as an emerging competitor in the relevant market around that same time, as Amazon started scraping Zulily to check its pricing and punishing suppliers whose products were being offered on Zulily for prices that Amazon did not like." ¶ 61.

Amazon essentially asks the Court to ignore these explicit allegations and agree with Amazon's subjective judgment that the allegations do not "establish [Zulily] as offering the wide range of products necessary to meet" the market definition. ECF 25 at 7. But all inferences should be drawn in Zulily's favor, *Frame-Wilson*, 664 F. Supp. 3d at 1204, and Zulily's allegations that it offers "a 'breadth and depth' of product selection that cannot be replicated in a physical store and that limited-selection online stores lack" are surely consistent with the market definition that starts with an "extensive breadth and depth of product selection" that cannot be "replicated in a physical store" and is "unavailable at limited-selection online stores." ¶¶ 34(a), 35(a), and 59 (alleging that Zulily's products span multiple categories, including clothes, beauty, toys, home décor, and electronics).

Despite the Complaint's explicit allegations that Zulily competes in the relevant market, Amazon also asserts that Zulily "alleges a relevant market . . . that specifically excludes . . . Zulily itself." ECF 25 at 8. But to arrive at this

ZULILY'S OPP'N TO AMAZON'S MTD – 6
Case No. 2:23-cv-01900

Bona Law PC
4275 Executive Square, Suite 200
La Jolla, CA 92037
858.964.4589

conclusion, Amazon misconstrues—and, in some instances, misstates[2]—the Complaint's allegations about market definition and power. In particular, Amazon points to allegations about Amazon's dominant share of online sales as if those somehow modify Zulily's market definition or exclude the possibility that there are more than four competitors in the Online Superstore Market. ECF 25 at 8. But the market share allegations do neither. They simply provide available information that indicates Amazon has market power, even though Zulily does not have access to market share data that perfectly aligns with its market definition.

Even if Zulily was not already competing in the relevant market (it was), Zulily would still have standing to pursue its claims as a potential competitor. Amazon does not dispute that potential competitors have antitrust standing where they have a "genuine intent to enter the market and a ***preparedness*** to do so." ECF 25 at 9 (quoting *Bubar v. Ampco Foods, Inc.*, 752 F.2d 445, 450 (9th Cir. 1985)). As a company that was, at minimum, already on the outskirts of the relevant market, Zulily easily clears this hurdle: it was an "online retail marketplace" that "competes in the relevant market as an online retailer offering a 'breadth and depth' of product selection" and was "pursuing scale" by offering lower prices in direct competition with Amazon. ¶¶ 4, 59, and 124.

Amazon's authority, all decided on summary judgment, does not support a different conclusion. *Bubar* found no standing where the plaintiff could only enter the market by purchasing one set of specific assets, for which it lacked both a contract and the financing. 752 F.2d at 454. In *Bourns, Inc. v. Raychem Corp.*,

---

2.    Amazon states "Zulily even repeats the FTC/States' allegation that, beyond those four, all other companies 'lack the breadth and/or depth of online superstores.'" ECF 25 at 8 (citing Compl. ¶ 51 (paraphrasing FTC/States Compl. ¶ 172)). This is false. Complaint ¶ 51 states in full: "Amazon's internal documents reportedly put its own market share at 72.5%, even if the market were to include stores that lack the breadth and/or depth of online superstores." ¶ 51. Nowhere does Zulily allege that "all other companies 'lack the breadth and/or depth of online superstores.'" ECF 25 at 8.

ZULILY'S OPP'N TO AMAZON'S MTD – 7
Case No. 2:23-cv-01900

Bona Law PC
4275 Executive Square, Suite 200
La Jolla, CA 92037
858.964.4589

a divided panel found no standing where the plaintiff was "wishing; it was not assembling the personnel, the equipment, the facilities, nor acquiring the knowledge, nor allocating the capital to put it into" the market. 331 F.3d 704, 711 (9th Cir. 2003). In *Parks v. Watson*, the plaintiff had merely taken "exploratory" steps to enter the market, while lacking experience, financing, and necessary contracts. 716 F.2d 646, 660 (9th Cir. 1983). None of these cases is remotely analogous. Even by Amazon's account, Zulily had everything it needed to be an online superstore except sufficient scale. Of course, Zulily alleges it could not gain further scale due to Amazon's anticompetitive conduct, cementing Zulily's standing whether viewed as an actual or potential competitor.

Amazon also argues that Zulily "fails to allege facts necessary to establish the existence of alternative prospective markets" in which it has antitrust standing, though Amazon does not contest that Zulily was an actual participant in the alleged online retail product markets.[3] ECF 25 at 6.

The crux of Amazon's argument appears to be that retail markets for women's clothing, beauty and wellness, home and garden, children's clothing, baby and maternity, footwear, toys and games, men's clothing, and electronics are implausible. Common sense dictates, however, that each of these markets is plausible; indeed, a trip to any large shopping mall in America will reveal specialty retailers for each of those products. And to the extent Amazon argues that ***online*** retail markets for these products are implausible, the Complaint alleges how and why online retail markets are distinct. ¶¶ 62–67; *see Frame-Wilson v. Amazon.com, Inc.*, 591 F. Supp. 3d 975, 990 (W.D. Wash. 2022) (in related class action, "Plaintiffs have alleged sufficient facts to support a distinction between the ecommerce retail market and the physical retail market").

---

3.    The Court does not need to reach this argument, as Zulily alleges its standing in the Online Superstore Market.

ZULILY'S OPP'N TO AMAZON'S MTD – 8
Case No. 2:23-cv-01900

Bona Law PC
4275 Executive Square, Suite 200
La Jolla, CA 92037
858.964.4589

These allegations meet Zulily's low burden to plead relevant markets. "An antitrust complaint [] survives a Rule 12(b)(6) motion unless it is apparent from the face of the complaint that the alleged market suffers a fatal legal defect. And since the validity of the 'relevant market' is typically a factual element rather than a legal element, alleged markets may survive scrutiny under Rule 12(b)(6) subject to factual testing by summary judgment or trial." *Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1045 (9th Cir. 2008). Indeed, in related litigation, this Court has already held that similar alleged markets are plausible. *Frame-Wilson*, 591 F. Supp. 3d at 989–90 (denying challenge to alleged markets for "(1) home improvement tools; (2) men's athletic shoes; (3) skin care; (4) batteries; (5) golf; (6) cleaning supplies; and (7) kitchen and dining products").

## II. AMAZON'S CONDUCT IS ILLEGAL PER SE UNDER SHERMAN ACT SECTION 1

Amazon cannot escape *per se* liability because, according to Amazon, the hub-and-spoke conspiracy it designed lacks an agreement at the rim. A rim is plausibly alleged, and *per se* treatment applies even without one: it is *per se* illegal for Amazon to orchestrate a multi-faceted combination for the singular purpose of eliminating its horizontal competition. The "precise 'machinery'" Amazon employed to impose that restraint does not remove its conspiracy from *per se* condemnation. *United States v. Apple, Inc.*, 791 F.3d 290, 327 (2d Cir. 2015).

But it is not necessary for the Court to decide whether *per se* treatment applies at this stage, without the benefit of discovery. At the least, Zulily alleges a plausible rule of reason violation so that all Section 1 claims may proceed.

### A. Amazon's Retail Price Fix Is *Per Se* Illegal

Amazon tries to separate Zulily's Section 1 claims into two discrete categories: a hub-and-spoke restraint and a collection of purely vertical restraints. This case, however, ***has no purely vertical restraints***. Resale price

Bona Law PC
4275 Executive Square, Suite 200
La Jolla, CA 92037
858.964.4589

agreements that are purely vertical (as in *Leegin Creative Leather Products v. PSKS, Inc.*, 551 U.S. 877, 892 (2007)) have procompetitive effects—to prevent freeriding or to promote brand specialization and consumer services. Those net benefits to interbrand competition are the reason why the *per se* rule does not apply to purely vertical restraints. *Cont'l T.V. v. GTE Sylvania*, 433 U.S. 36, 54–55 (1977) (vertical restrictions promote interbrand competition by allowing manufacturers to achieve efficiencies in product distribution; these "redeeming virtues" are "implicit in every decision sustaining vertical restrictions under the rule of reason").

But Amazon is a dominant retailer who used vertical price agreements only to induce group action to foreclose its own horizontal competition. The procompetitive effects that were easily identified in *Sylvania* and *Leegin* are absent, while the intended anticompetitive effects are obvious: supracompetitive consumer prices and reduced output—the same results as if Amazon had fixed prices directly with its horizontal competitors. That Amazon strategically coerced vertical actors to execute the price fix makes it no less dangerous. *Sylvania,* 433 U.S. at 58–59 ("particular applications of vertical restrictions might justify per se prohibition" based upon their "demonstrable economic effect"). It only makes it harder, in Amazon's view, to prosecute.

### B.  Amazon's Price-Fixing Agreements with Resellers (and Wholesalers) Are *Per Se* Illegal

Amazon does not dispute that its agreements with resellers (and separately, with wholesalers) are *per se* illegal outside of a hub-and-spoke arrangement. In counts two (and three), the Complaint alleges that the objective and intent behind each price-parity and minimum-margin agreement (and all the agreements combined) was to eliminate Amazon's horizontal competition, and the agreements obviously functioned to suppress retail price competition and reduce output.

ZULILY'S OPP'N TO AMAZON'S MTD – 10
Case No. 2:23-cv-01900

Bona Law PC
4275 Executive Square, Suite 200
La Jolla, CA 92037
858.964.4589

Although the source of the restraint (retailer v. manufacturer) may be important, ultimately, it is the restraint's desired effects, and lack of redeeming virtue, that determine whether *per se* treatment applies. *See N. Pac. Ry. v. United States*, 356 U.S. 1, 5 (1958) ("there are certain agreements or practices which **because of their pernicious effect on competition and lack of any redeeming virtue** are conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm they have caused or the business excuse for their use") (emphasis added); *Leegin*, 551 U.S. at 897–98 (where retailers are the "impetus for a vertical price restraint, there is a greater likelihood that the restraint facilitates a retailer cartel or supports a dominant, inefficient retailer").

A collusive restraint designed to eliminate one's own horizontal price competition, with no offsetting benefits, is *per se* illegal. "Nominally applying" that restraint vertically does not change its intended result. *Coca-Cola Co. v. Omni Pac. Co.*, No. C 98-0784 SI, 2000 U.S. Dist. LEXIS 17089, at *19 (N.D. Cal. Sept. 25, 2000) (denying defendant's summary judgment motion to dismiss a *per se* claim where the plaintiff demonstrated questions of material fact as to whether its competitors were the impetus behind a vertical action to eliminate price competition to the competitors' benefit); *Com-Tel, Inc. v. DuKane Corp.*, 669 F.2d 404, 412 (6th Cir. 1982) ("[a]lthough the restraints were nominally applied vertically, it was really to [the reseller's] advantage that the restraints were applied to exclude its horizontal competitor," which has no offsetting beneficial effect on interbrand competition); *Cernuto, Inc. v. United Cabinet Corp.*, 595 F.2d 164, 168 (3d Cir. 1979) (despite vertical aspects, market behavior with the purpose and effect of eliminating one's horizontal competition, at the retail level, and not to promote competition at the manufacturer level, lacks the redeeming virtues inherent in purely vertical restraints).

Here, Amazon does not dispute that the Complaint plausibly alleges an

Bona Law PC
4275 Executive Square, Suite 200
La Jolla, CA 92037
858.964.4589

overall scheme to fix the retail prices charged off Amazon by Amazon's competitors. Nor does it dispute that the obvious and intended effects of that scheme are the same as if Amazon fixed prices with its competitors directly: supercompetitive consumer prices and reduced output and consumer choice. The scheme had no redeeming effects, such as brand investment, innovation, enhanced customer services, or efficiency, and Amazon does not claim otherwise. While Amazon does say that consumer prices decreased **temporarily** during intermittent pricing wars (but not necessarily to competitive levels), even if true, that fact does not void that the overall net effects that were obviously anticompetitive.

In this respect, Zulily respectfully disagrees with the Court's decision in *Frame-Wilson* dismissing the *per se* claims of a putative class of consumers based on the nominally vertical application of the at-issue restraints. There, the plaintiffs alleged that Amazon's retail price-parity agreements are horizontal restraints between Amazon, as an online retailer, and its third-party sellers, as online retailers who compete with Amazon. The Court rejected this because "Plaintiffs are not challenging Amazon's conduct as a competitor to its third-party sellers" because there are no allegations that Amazon and its third-party sellers agreed on how they would compete with one another in online sales. 591 F. Supp. 3d at 986–87.

But here, by contrast, Zulily alleges that Amazon's price-parity and minimum-margin agreements do not dictate how merchants and Amazon do business with each other—**but how merchants do business off Amazon to affect Amazon's horizontal competition** (including sometimes with third-party resellers and/or wholesalers who have their own retail business off Amazon that competes directly with Amazon's). That suppliers are (at times) vertical to Amazon is less important than where Amazon immediately directed the price-fix: here, at Amazon's horizontal competition to raise the floor of consumer prices,

ZULILY'S OPP'N TO AMAZON'S MTD – 12
Case No. 2:23-cv-01900

Bona Law PC
4275 Executive Square, Suite 200
La Jolla, CA 92037
858.964.4589

making them artificially high. *Frame-Wilson* did not address this. *See also* 664 F. Supp. 3d at 1208 (focusing on the nature of the relationships between Amazon and supplier, not the restraint imposed).

Finally, *Frame-Wilson* says that even if the agreements "contain[ed] a horizontal element," they would be analyzed under the rule of reason as dual-distribution and "hybrid" agreements. 591 F. Supp. 3d at 987; 664 F. Supp. 3d at 1207 (citing *Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1481 (9th Cir. 1986) (a Cartwright Act decision)). But *Dimidowich* involved a *Leegin*-style vertical restriction with "corresponding benefits in the interbrand market," i.e., where a distributorship agreement between a distributor and a manufacturer fixed the terms of the distributor's ability to resell the manufacturer's products, a factual scenario with potential interbrand benefits that are absent here. Amazon is not a manufacturer and has not fixed the terms of suppliers' ability to distribute Amazon's products, or even to sell on Amazon's platform. *Dimidowich*, 803 F.2d at 1481. The impetus for the fix here is a dominant retailer setting its suppliers' ability to resell their ***own*** products ***off***-Amazon and at what prices. That restraint does not promote the wider availability of products, as in the dual distributorship context. On its face, the fix reduces output instead.

### 1. Additionally, Zulily has plausibly alleged a *per se* illegal *Klor's*-style "hub-and-spoke" conspiracy.

In a *Klor's Inc. v. Broadway-Hale Stores, Inc.*, hub-and-spoke conspiracy, "a dominant retailer pressure[s] several manufacturers—who, in turn, agree[s] among themselves"—to boycott the retailer's rival." *Honey Bum, LLC v. Fashion Nova, Inc.*, 63 F.4th 813, 820–21 (9th Cir. 2022) (citing *Klor's*, 359 U.S. 207, 212–13 (1959)). *Klor's* applies to both price-fixing and outright boycotts.

In fact, in *Klor's* itself, a dominant retailer used its "monopolistic" buying power to persuade major manufacturers of appliances to sell their products to the plaintiff-retailer only at discriminatory prices and on unfavorable terms. 359

ZULILY'S OPP'N TO AMAZON'S MTD – 13
Case No. 2:23-cv-01900

Bona Law PC
4275 Executive Square, Suite 200
La Jolla, CA 92037
858.964.4589

U.S. at 209. Those allegations "clearly show one type of trade restraint and public harm the Sherman Act forbids" a "wide combination consisting of manufacturers, distributors and a retailer" who removed plaintiff's freedom to compete openly and robbed the manufacturers of their freedom to sell to plaintiff, in some instances, at all. *Id.* at 210, and 212–13.

The instant case is the equivalent of *Klor's* and other "hub-and-spoke" style cases, e.g., *Interstate Cir., Inc. v. United States*, 306 U.S. 208 (1939); *Apple,* 791 F.3d 290; and *Toys "R" Us v. FTC*, 221 F.3d 928 (7th Cir. 2000). In each of those, there were actors at two levels of the distribution chain. One actor at the retail level (the hub, i.e., Interstate Circuit, Apple, Toys "R" Us) coerced third parties, on a different level, into compliance with demands to adhere to minimum prices or not to do certain business with the hub's competitors. The ultimate objective of the schemes was to foreclose the hub's horizontal price competition and reduced output was an obvious effect. *Toys*, 221 F.3d at 935.

In *Toys*, for example, even though toy manufacturers wanted to diversify from Toys "R" Us ("TRU"), they agreed to sell to TRU's competitors only on unfavorable terms with the understanding that other manufacturers were doing the same. Without such an inferred understanding, each manufacturer would be afraid to act alone because, if its competitors cheated, they would gain a special advantage in the non-TRU niche stores. To mitigate this, TRU policed the conspiracy and punished cheaters.

As the *Toys* court explained, ***that is a horizontal restraint***. "[A] legitimate vertical transaction would have been the manufacturer going to TRU and asking it to be the exclusive carrier of the manufacturer's goods; in exchange for that exclusivity, the manufacturer would hope to receive more effective promotion of its goods, and TRU would have a large enough profit margin to do the job well." *Id.* at 936. Instead, the manufacturers were "in effect being asked by TRU to reduce their output" and were "willing to do so only if TRU would

ZULILY'S OPP'N TO AMAZON'S MTD – 14
Case No. 2:23-cv-01900

Bona Law PC
4275 Executive Square, Suite 200
La Jolla, CA 92037
858.964.4589

protect them against cheaters." *Id.* The purpose was to disadvantage TRU's competitors, not to promote brand development or increase efficiency. *See In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1192 (9th Cir. 2015) (citing *Toys* with approval).

*Apple* is also instructive. There, Apple induced book publishers, vertical to Apple, to supply ebooks to Apple's competitor (Amazon) only on certain pricing terms. Although the objective of the conspiracy was to eliminate its horizontal retail price competition for ebooks, Apple tried to escape per se liability by isolating its agreements with the publishers and characterizing them as vertical.

The Second Circuit rejected this. The relevant question is whether the **restraint imposed** promotes or destroys competition—not where the defendant is situated in the chain. *Apple*, 791 F.3d at 322. "By agreeing to orchestrate a horizontal price-fixing conspiracy, Apple committed itself to achieving that unlawful objective," which would always or almost always tend to restrict competition and decrease output. *Id.* (citation omitted).

In instances like these, the Supreme Court has indicated that a capital-A agreement at the rim is unnecessary. In *Interstate Circuit*, a dominant movie exhibiter (Interstate) agreed with eight film distributors, vertical to Interstate Circuit, that as a condition of Interstate's continued exhibition of the distributors' films, the distributors would do business with Interstate's competitors only on certain terms (minimum prices, restrictions on double features). Each distributor knew that all the other distributors were being asked to adhere to the same restrictions—Interstate sent one letter with all eight listed as recipients.

While the district court found an agreement among the distributors themselves, the Supreme Court said "it was enough that, knowing that concerted action was contemplated and invited, the distributors gave their adherence to the scheme and participated in it. Each distributor was advised that the others were asked to participate; each knew that cooperation was essential to the successful

Bona Law PC
4275 Executive Square, Suite 200
La Jolla, CA 92037
858.964.4589

operation of the plan." *Interstate Cir.*, 306 U.S. at 226–27; *see also Brown v. Pro Football*, 518 U.S. 231, 240–41 (1996) ("Antitrust law also sometimes permits judges or juries to premise antitrust liability upon little more than uniform behavior among competitors, preceded by conversations implying that later uniformity might prove desirable." (citing *United States v. Gen. Motors Corp.*, 384 U.S. 127, 142–43 (1966);[4] and *Interstate Cir.*, 306 U.S. at 226–27)).

These *Klor's*-style cases do not involve a price-maintenance agreement where a manufacturer controls sales *of its own product* by insisting dealers not cut prices below a certain level, which might increase interbrand competition by encouraging dealers to promote and protect the brand. *See Leegin*, 551 U.S. at 890–92. That reasoning does not apply to TRUs', Apple's or Interstate's conduct that controlled—not the terms of their own business—but the terms on which their suppliers accepted *other retailers' business*. *See Ohio v. Am. Express Co.*, 585 U.S. 529, 574–76 (2018).

The same is true here. Amazon's price-parity and minimum-margin agreements fixed the minimum prices that could be charged by *other retailers*—not by Amazon. And those other retailers comprise Amazon's horizontal competition. That is a horizontal fix that is no less pernicious because the mastermind was "facially vertical" to the spokes. *See also Nastasi & Assocs. v. Bloomberg, L.P.*, No. 20-CV-5428 (JMF), 2022 U.S. Dist. LEXIS 172854, at *37–43 (S.D.N.Y. Sept. 23, 2022) (rejecting a motion to dismiss where the complaint alleged a conspiracy with an objective that is illegal per se, i.e., to fix horizontal prices). *Leegin*, 551 U.S. at 897–98 (a powerful retailer as the ringleader increases the likelihood of overall net anticompetitive effects); *In re*

---

4.    In *General Motors*, General Motors agreed with its vertical dealers that they would not sell Chevrolets to retail discounters, resulting in "a fabric interwoven by many strands of joint action to eliminate the discounters:" "where businessmen concert their actions in order to deprive others to access to merchandise which the latter wish to sell to the public, we need not inquire into the economic motivation underlying their conduct." 384 U.S. at 144–48.

ZULILY'S OPP'N TO AMAZON'S MTD – 16
Case No. 2:23-cv-01900

Bona Law PC
4275 Executive Square, Suite 200
La Jolla, CA 92037
858.964.4589

*Deere & Co. Repair Serv. Antitrust Litig.*, No. 3:22-cv-50188; MDL No. 3030, 2023 U.S. Dist. LEXIS 210516, at *94 (N.D. Ill. Nov. 27, 2023) ("Plaintiffs' Complaint sufficiently and plausibly pleads allegations to support this type of 'overall' or 'overarching' conspiracy by which horizontal agreements can be inferred.")

Nor does Amazon dispute that Zulily plausibly alleged the *Interstate* factors to find a horizontal combination: Amazon's third-party resellers and wholesalers were aware that Amazon required every other reseller and wholesaler to adhere to the same restrictive price agreements; all the resellers and wholesalers knew that every other reseller and wholesaler was, in fact, complying; and they knew that cooperation was required (¶¶ 91–94).

## 2. Even if the Court concludes that a capital-A agreement is required at the rim, Zulily plausibly alleged that too.

To infer an agreement at the rim, the Ninth Circuit requires parallel conduct and certain plus factors, i.e., "economic actions and outcomes that are largely inconsistent with unilateral conduct but largely consistent with explicitly coordinated action." *Musical Instruments*, 798 F.3d at 1194. A "co-conspirator need not know of the existence or identity of the other members of the conspiracy or the full extent of the conspiracy." *In re High-Tech Emp. Antitrust Litig.*, 856 F. Supp. 2d 1103, 1118 (N.D. Cal. 2012); *see also Beltz Travel Serv., Inc. v. Int'l Air Transp. Ass'n*, 620 F.2d 1360, 1367 (9th Cir. 1980) ("Participation by each conspirator in every detail in the execution of the conspiracy is unnecessary to establish liability, for each conspirator may be performing different tasks to bring about the desired result."). "Nor should courts indulge antitrust defendants who move to dismiss by 'tightly compartmentalizing the various factual components and wiping the slate clean after scrutiny of each. The character and effect of a conspiracy are not to be judged by dismembering it and viewing its separate parts, but only by looking at it as a whole.'" *In re Cal. Bail Bond Antitrust Litig.*,

Bona Law PC
4275 Executive Square, Suite 200
La Jolla, CA 92037
858.964.4589

511 F. Supp. 3d 1031, 1055 (N.D. Cal. 2021); *see also Deere & Co.*, 2023 U.S. Dist. LEXIS 210516, at *83–84.

Here, Amazon does not dispute that the Complaint plausibly alleges parallel conduct. Instead, it challenges one plus factor, arguing that the alleged "prevalent[t] and expansive[] communications between and among third-party retailers and wholesalers about compliance with Amazon's price-parity agreements" is not supported by a "single fact." ECF 25 at 13. But Amazon then cites a single fact: that ecommerce consultants are aware of the restrictive scheme and counselled their clients (the resellers and wholesalers working with Amazon) how to comply. Amazon argues that fact is insufficient: it is "substantiate[d]" in the complaint with only one YouTube video; the consultants are not co-conspirators; and there is no allegation that "even a *single* wholesaler or third-party seller adopted that strategy in conscious agreement" with all others. *Id.* None of this negates the rim.

At this stage, Zulily is not required to "substantiate" one factual allegation with another. That the ecommerce consultants are not co-conspirators is irrelevant. Their relevance is that they serve to confirm to everyone in the industry that everyone else is adhering to the same scheme and how. They are conduits for exchanging information about the price-fixing agreements. Finally, the complaint is not missing an allegation that wholesalers and retailers adopted the scheme: the Complaint alleges they had no choice but to do that. Amazon required it, and with the threat of Buy Box suppression, compliance was widespread. ¶¶ 97, 105, 116, 127.

At any rate, Amazon ignores the additional Complaint allegations showing the pervasiveness of relevant communications and opportunities to communicate about the scheme, including the regularly occurring communications between and among third-party retailers and wholesalers themselves. Resellers communicate with (at least) their own wholesalers about adherence to Amazon's

Bona Law PC
4275 Executive Square, Suite 200
La Jolla, CA 92037
858.964.4589

price-fixing agreements and those wholesalers discuss the same thing with other retailers to whom they supply, "creating an interconnected web of communications about compliance with Amazon's price-fixing" even beyond the additional communications with and through the ecommerce consultants. ¶ 94. Even Zulily, which had no part in the scheme, was aware of how it worked because Zulily's suppliers explained to Zulily the necessity of compliance for fear of punishment. ¶¶ 128–135.

In any event, the presence or absence of horizontal communications is not dispositive. It is one of several plus factors that can make a rim agreement plausible. Amazon does not dispute the several others that are properly pled:

***First***, unlike in *Musical Instruments*, here there was extreme action against self-interest. Zulily alleges facts that third-party resellers and wholesalers, like in *Toys*, wanted to diversify from Amazon, rather than become more dependent on it. But given the threat of the Buy Box and Amazon withdrawing its business altogether, third-party resellers and wholesalers had no choice but to stop dealing with retailers like Zulily who wished to compete with Amazon on price. ¶¶ 128–135. Additionally, Zulily alleges facts that sellers wanted to price products off Amazon lower—to generate more scale—but Amazon precluded them from doing so. ¶¶ 96–98, and 159–160. Not competing on price is considered a significant "against interest" plus factor. *See, e.g., In re RealPage, Inc. Rental Software Antitrust Litig. (No. II),* No. 3:23-md-03071; MDL No. 3071, 2023 U.S. Dist. LEXIS 230200, at *76–77 (M.D. Tenn. Dec. 28, 2023) (setting high consumer prices instead of gaining scale has "significant weight" as a plus factor). *Nastasi,* 2022 U.S. Dist. LEXIS 172854, at *38–39.

***Second***, unlike in *Musical Instruments*, the FTC has not only investigated Amazon's conduct, but has concluded that Amazon created the price-fixing agreements and enforced them. The California Attorney General also investigated Amazon's conduct and concluded that it orchestrated illegal price

Bona Law PC
4275 Executive Square, Suite 200
La Jolla, CA 92037
858.964.4589

collusion.

**Third**, unlike in *Musical Instruments,* individual action would be perilous. In the absence of everyone else adhering to Amazon's demands, a seller's competitors could rapidly gain scale off Amazon. ¶ 163. This is why Amazon systematically policed the agreements and enforced them with strict punishments.

**Fourth**, each third-party retailer (and wholesaler) knew that every other third-party retailer (and wholesaler) had made the same pricing agreements with Amazon because Amazon advertised the agreements and the fact that they were non-negotiable—a clear invitation to agree.

**Finally**, Zulily alleges a market susceptible to conspiracy, including a hub with monopolistic power as ringleader. *See Cal. Bail Bond*, 511 F. Supp. 3d at 1046.

This meets the plausibility standard (and then some). *See Northshore Sheet Metal, Inc. v. Sheet Metal Workers Int'l Ass'n, Local 66*, No. 15-CV-1349 BJR, 2018 U.S. Dist. LEXIS 163327, at *9 (W.D. Wash. Sept. 24, 2018) (even if the horizontal players acted unwillingly or for different reasons, that does not insulate the conduct from antitrust liability; a complaint survives a motion to dismiss where it alleges that the actors had knowledge of and jointly participated in the hub's efforts to coordinate prices); *Nastasi*, 2022 U.S. Dist. LEXIS 172854, at *39–41 (a plaintiff is not required to allege a specific horizontal agreement: "where parties to vertical agreements have knowledge that other market participants are bound by identical agreements, and their participation is contingent on that knowledge, they may be considered participants in a horizontal agreement") (citations omitted).

### 3. The Court need not resolve the mode of analysis now.

Courts defer ruling on the correct mode of analysis where the plaintiff plausibly alleges some Sherman Act violation and there is a dispute about

whether the relevant relationships are horizontal, vertical or both. *Gatan, Inc. v. Nion Co.*, No. 15-cv-01862-PJH, 2017 U.S. Dist. LEXIS 129127, at *13 (N.D. Cal. Aug. 14, 2017) ("Because [the counterclaim plaintiff] was both a customer and a potential competitor . . . , it is not clear at this stage whether the [a]greement should be considered a vertical or horizontal restraint. . . . [b]ut the court need not decide whether the rule of reason applies to the [a]greement . . . at the pleading stage."); *DAT Sols., LLC v. Convoy, Inc.,* No. 3:22-cv-00088-IM, 2023 U.S. Dist. LEXIS 70734, at *29–30 (D. Or. Apr. 24, 2023) (same); *High-Tech Emp.*, 856 F. Supp. 2d at 1122 ("Defendants' argument relies on the false assumption that the Court should apply a rule of reason analysis" but "the Court need not decide now whether *per se* or rule of reason analysis applies. Indeed, that decision is more appropriate on a motion for summary judgment."); *Gatan,* 2017 U.S. Dist. LEXIS 129127, at *13–14 ("[T]he court need not decide whether the rule of reason applies to the Agreement, or weigh its pro-and anti-competitive effects, at the pleading stage.") (citation omitted).

Given the comparable situation here, it would be proper to delay this key decision until discovery is completed.

## C.    Amazon's Conduct Is Illegal Under the Rule of Reason

Amazon argues that, under the rule of reason, the second and third claims do not allege "substantial anticompetitive effect that harms consumers" and/or Zulily's harm. ECF 25 at 14–15.

The former argument has already been rejected where consumer classes are challenging the same conduct alleged here. *Frame-Wilson*, 664 F. Supp. 3d at 1210 (a putative class of consumers who purchased off Amazon plausibly alleged they paid supracompetitive prices); *Brown v. Amazon.com, Inc.*, No. 2:22-cv-00965-JHC, 2023 U.S. Dist. LEXIS 158801, at *27–28 (W.D. Wash. Sept. 7, 2023) (a putative class who purchased goods on Amazon plausibly alleged that Amazon's MMAs resulted in reduced consumer choice and an increase in

ZULILY'S OPP'N TO AMAZON'S MTD – 21
Case No. 2:23-cv-01900

Bona Law PC
4275 Executive Square, Suite 200
La Jolla, CA 92037
858.964.4589

consumer prices); *see also State v. Amazon.com, Inc.*, No. CGC-22-601826, slip op. (Cal. Super. Ct., S.F. Cnty. Mar. 30, 2023) at 12 (concluding that the People plausibly alleged market wide anticompetitive effects including supracompetitive consumer prices) (attached to this opposition for the Court's convenience as Exhibit 1).

The same result applies to Zulily. While Amazon says "much of the complaint" (6 of 238 paragraphs) concerns Amazon's discounting its own prices in direct competition with Zulily and that specific conduct ***benefited*** consumers, that argument both misconstrues that Complaint's allegations and is irrelevant at this stage. ECF 25 at 15. The alleged instances of price competition are not the anticompetitive conduct complained of, they are the basis for Amazon targeting Zulily with its subsequent anticompetitive conduct. In addition, whatever isolated and temporary price reductions resulted from early price wars between the parties, the Complaint alleges that the overall net effect was supracompetitive consumer prices and reduced output, choice and innovation. ¶¶ 146–148; *High-Tech Emp.*, 856 F. Supp. 2d at 1122 (the Court need not weigh the benefits and detriments at the pleadings stage); *Twin City Sportservice, Inc. v. Charles O. Finley & Co.*, 676 F.2d 1291, 1302 (9th Cir. 1982) (the court is not limited to market effects of one contract, but should consider the "overall effects" of a defendant's conduct).[5]

As to Zulily's injury, Amazon argues that Zulily was not harmed because it was free to set its own prices—third-party resellers, according to Amazon, did not control prices on Zulily's website. But that contradicts the well-pleaded facts that Amazon's suppliers ***did*** control Zulily's pricing. Specifically, they directed Zulily to raise its prices and/or abide by minimum-advertised-pricing (MAP)

---

5.     Separately, the discounting allegations go to the fact that Amazon viewed Zulily as an emerging competitor in the relevant market, and that Amazon abused its monopoly power to eliminate Zulily as a competitor. The allegations are not directly relevant to the Section 1 claims.

Bona Law PC
4275 Executive Square, Suite 200
La Jolla, CA 92037
858.964.4589

policies, so that Zulily's retail prices would not be lower than Amazon's. Zulily was left with the choice not to compete against Amazon on price or lose suppliers. That is competitive harm that cost Zulily at least dozens of suppliers. ¶ 127.

Finally, Amazon argues that Zulily cannot state a claim because it does not allege how Amazon's scheme affected its wholesale costs. Zulily alleges it lost a slew of suppliers, website traffic, sales, and scale due to the combined effects of Amazon's scheme, making it impossible for Zulily to compete in the relevant market. Amazon provides no reason why Zulily also must allege supercompetitive purchasing costs, although it easily could.

## III. AMAZON ABUSED ITS MONOPOLY POWER

Zulily plausibly alleges antitrust injury and all required elements of its monopolization claim under Section 2 of the Sherman Act. *United States v. Grinnell Corp.*, 384 U.S. 563, 570–71 (1966) ("The offense of monopoly under § 2 of the Sherman Act has two elements: (1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power."); *Pac. Express, Inc. v. United Airlines, Inc.*, 959 F.2d 814, 817 (9th Cir. 1992) (same).

The "willful acquisition" element is met where a defendant succeeds due to something other than "superior product, business acumen, or historic accident"—i.e., due to conduct which unfairly forecloses competition from others. *Grinnell*, 384 U.S. at 570–71. While "anticompetitive conduct comes in too many forms and shapes to permit a comprehensive taxonomy," *Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064, 1072 (10th Cir. 2013), and it "is sometimes difficult to distinguish robust competition from conduct with long-run anticompetitive effects," *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 767–78 (1984); *United States v. Microsoft Corp.*, 253 F.3d 34, 58 (D.C. Cir. 2001) (same), the Supreme Court has condemned conduct of the sort that Zulily alleges here as exclusionary. *Grinnell*, 384 U.S. at 576 (specifically finding that "restrictive

ZULILY'S OPP'N TO AMAZON'S MTD – 23
Case No. 2:23-cv-01900

Bona Law PC
4275 Executive Square, Suite 200
La Jolla, CA 92037
858.964.4589

agreements that pre-empted [] a segment of the market" and "[p]ricing practices that contained competitors" are "unlawful and exclusionary practices."). And so has this Court. *Dark Catt Studios Holdings, Inc. v. Valve Corp.*, No. C21-0872-JCC, 2022 U.S. Dist. LEXIS 82541, at *4–5 (W.D. Wash. May 6, 2022) (denying motion to dismiss concerning the use of vertical MFN provisions to further anticompetitive goals of maintaining market power and charging supracompetitive prices); *Wolfire Games, LLC v. Valve Corp.,* No. C21-0563-JCC, 2022 U.S. Dist. LEXIS 82561, at *10–11 (W.D. Wash. May 6, 2022) (denying motion to dismiss where the complaint alleged a regime to prevent price competition from rivals resulting in higher prices and less competition in the broader market).

This Court, moreover, has already rejected Amazon's same facially procompetitive argument concerning the same conduct alleged here. *See Brown*, 2023 U.S. Dist. LEXIS 158801, at *12 ("Amazon's procompetitive justifications of MMAs may be used to rebut Plaintiffs' claims once a prima facie case has been established, but the Court need not consider Amazon's justifications on a motion to dismiss.") (citations omitted); *Frame-Wilson*, 664 F. Supp. 3d at 1209 ("Amazon's argument that its 'Fair Pricing Policy' has procompetitive justifications may be used to rebut Plaintiffs' claims once a *prima facie* case has been established, but the Court need not consider such rebuttals on a motion to dismiss.") (citations omitted); *see also De Coster v. Amazon.com, Inc.*, No. C21-693RSM, 2023 U.S. Dist. LEXIS 12365, at *7–11 (W.D. Wash. Jan. 24, 2023) (similar).

Here, too, the earliest possible time to decide whether Amazon's proffered justification (allegedly lower consumer prices) is tenable and, if so, whether the purported justification is outweighed by the significant anticompetitive effects of the conduct overall is summary judgment. *See Somers v. Apple, Inc.*, Nos. C 05-00037 JW; C 07-06507 JW, 2010 U.S. Dist. LEXIS 64772, at *23 (N.D. Cal. June

ZULILY'S OPP'N TO AMAZON'S MTD – 24
Case No. 2:23-cv-01900

Bona Law PC
4275 Executive Square, Suite 200
La Jolla, CA 92037
858.964.4589

29, 2010) ("Thus, the validity of a claimed business justification is a question of fact."); *In re eBay Seller Antitrust Litig.*, 545 F. Supp. 2d 1027, 1033 (N.D. Cal. 2008) ("This argument is misplaced. A procompetitive benefit may rebut a *prima facie* case. However, to survive dismissal Plaintiffs are required only to establish a *prima facie* case.").

At this stage, Zulily must allege only a plausible *prima facie* case. It has done that by alleging facts that Amazon's scheme, as a whole, forced stores like Zulily either to raise their prices or risk losing suppliers. ¶¶ 99–100, 103. This, in turn, eliminated the need for Amazon to lower its own prices (which would cut into its margin), maintaining market-wide prices on and off Amazon at artificially high levels and preventing competitors from gaining scale or excluding them from the market altogether. *See, e.g.*, ¶¶ 140–145 (alleging that Amazon has harmed competition by foreclosing Zulily as a competitor, depriving customers of a lower priced outlet, and leaving Amazon free to "control prices or exclude competition") *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 391 (1956)); *cf. In re EpiPen Mktg., Sales Practices & Antitrust Litig.*, 44 F.4th 959, 985–86 (10th Cir. 2022) (anticompetitive conduct "harms consumers by excluding rivals"). The obvious result is less competition and higher prices—the two hallmarks of anticompetitive behavior. *NCAA v. Bd. of Regents*, 468 U.S. 85, 113 (1984).

## IV. ZULILY'S STATE-LAW CLAIMS ARE ALSO PLAUSIBLE

Amazon urges that the federal and state-law claims rise and fall together, i.e., if Zulily's federal claims survive dismissal, so do the state law claims.[6] ECF 25 at 20–21. For all the reasons stated above, the state-law claims should proceed

---

[6] State antitrust laws do not all harmonize with federal law, and resale price maintenance is still a *per se* violation in some states. For instance, "Under current California Supreme Court precedent, vertical price restraints are per se unlawful under the Cartwright Act. *Darush v. Revision LP*, No. CV 12-10296 GAF (AGRx), 2013 U.S. Dist. LEXIS 60084 at *16 (C.D. Cal. Apr. 10, 2013) (citing *Mailand v. Burckle*, 20 Cal. 3d 367 (1978)).

ZULILY'S OPP'N TO AMAZON'S MTD – 25
Case No. 2:23-cv-01900

Bona Law PC
4275 Executive Square, Suite 200
La Jolla, CA 92037
858.964.4589

to discovery.

As for the Eighth Claim brought under Washington State Unfair Competition Law, the allegation that Amazon falsely represented to consumers that its prices are the lowest and/or fair, is not "wholly conclusory." *Id.* at 22.

The Complaint alleges facts showing that Amazon has conditioned consumers to believe that Amazon's prices are the "lowest and/or competitive leading consumers to believe that they paid fair—and not artificially inflated—prices." ¶ 237. The Complaint alleges Amazon achieves that objective through its price-parity and minimum-margin agreements that require prices off Amazon to be raised artificially, even if Amazon's online competitors would otherwise compete on price. ¶¶ 159–160. This maintains prices at artificially high levels—and precludes competitive prices from being advertised and/or charged. When consumers see an Amazon price and are led to believe it is competitive or truly the "low," that impression is false. ¶ 235(f).

Amazon's final argument is that the Eighth Claim should be dismissed because Zulily does not allege it suffered harm "in exactly the same fashion" as additional plaintiffs. ECF 25 at 22 n.13. That test applies when the alleged misrepresentation is made ***privately*** and the Court must determine whether the private conduct is susceptible to repetition such that it likely harmed the public more broadly beyond a single purchaser. It is irrelevant here where Amazon's misrepresentations were publicly advertised. *Goodyear Tire & Rubber Co. v. Whiteman Tire*, 935 P.2d 628, 635 (Wash. Ct. App. 1997) (a representation made by a manufacturer privately to a sophisticated dealer does not sufficiently affect the public interest).

## CONCLUSION

For the foregoing reasons, Amazon's motion to dismiss should be denied in its entirety. If the Court were to grant any portion of Amazon's motion, Zulily requests leave to amend the Complaint to address any deficiencies. *See, e.g.,*

Bona Law PC
4275 Executive Square, Suite 200
La Jolla, CA 92037
858.964.4589

*Billing Assocs. Nw., LLC v. Addison Data Servs., LLC*, C20-1854RSM, 2022 U.S. Dist. LEXIS 208039, at \*11–12 (W.D. Wash. Nov. 16, 2022); *PBTM LLC v. Football Nw., LLC*, 511 F. Supp. 3d 1158, 1184 (W.D. Wash. 2021) (citing *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

Respectfully submitted,

DATED: June 20, 2024

BONA LAW PC

By: *s/ Jon Cieslak*

Jon Cieslak (admitted *pro hac vice*)
4275 Executive Square, Suite 200
La Jolla, CA 92037
858.964.4589
jon.cieslak@bonalawpc.com

BONA LAW PC
Molly Donovan (admitted *pro hac vice*)
James Lerner (admitted *pro hac vice*)
41 Madison Avenue #2509
New York, NY 10010
212.634.6861
molly.donovan@bonalawpc.com
james.lerner@bonalawpc.com

*Lead Counsel for Plaintiff*

CARNEY BADLEY SPELLMAN, P.S.

By: *s/ Mark Rosencrantz*

Mark Rosencrantz (WSBA #26552)
701 5th Avenue, Suite 3600
Seattle, WA 98104
206.622.8080
rosencrantz@carneylaw.com

*Local Counsel for Plaintiff*

We certify that this memorandum contains 7,947 words, in compliance with the Local Civil Rules.

ZULILY'S OPP'N TO AMAZON'S MTD – 27
Case No. 2:23-cv-01900

Bona Law PC
4275 Executive Square, Suite 200
La Jolla, CA 92037
858.964.4589